GUI ZHEN ZHU, and
RONG JIAO YIN,
*on their own behalf and on behalf of others
similarly situated*

           Plaintiffs,

  v.

MATSU CORP d/b/a Matsu; and
MATSU GRILL CO. LLC, d/b/a Matsuri and;
KIMMING MARTY CHENG, and
ZIQIAO CAO a/k/a Michael Cao,

        Defendants.

3:18-cv-203 (CSH)


**JANUARY 2, 2019**


## RULING ON PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION UNDER SECTION 216(b) OF THE FLSA

**HAIGHT, Senior District Judge:**

Plaintiffs Gui Zhen Zhu ("Zhu") and Rong Jiao Yin ("Yin") bring this action on behalf of themselves and others similarly situated against Defendants Matsu Corp., d/b/a Matsu; Matsu Grill Co. LLC, d/b/a Matsuri; Kimming Marty Cheng; and Ziqiao Cao, a/k/a Michael Cao (collectively "Defendants") for alleged violations of the minimum wage and overtime pay provisions of the Federal Labor Standards Act ("FLSA") and the Connecticut Minimum Wage Act ("CMWA").

Plaintiffs now move for: (1) conditional certification of an FLSA collective action pursuant to 29 U.S.C. § 216(b) ("Section 216(b)"); and (2) class action certification under

Federal Rule of Civil Procedure 23 for Plaintiffs' CMWA claims. This Ruling resolves Plaintiffs' motion to conditionally certify an FLSA collective action.

## I. BACKGROUND

Plaintiffs Zhu and Yin allege that Defendants, owners of two restaurants in Westport and Darien, Connecticut,[1] violated the minimum wage and overtime pay provisions of the FLSA and CMWA by willfully underpaying their employees. On February 2, 2018, Plaintiffs filed a complaint in this action seeking to recover from Defendants unpaid minimum wages and unpaid overtime compensation, among other damages. *See* Doc. 1 ("Compl."), at ¶ 4. Citing their personal observations and conversations with other employees, Zhu and Yin assert that Defendants engaged "in a pattern and practice of failing to pay [their] employees . . . minimum wage" and "overtime compensation," and "refused to record" the hours worked by Plaintiffs and similarly situated employees—including the hours worked "in excess of forty hours each week." *See id.* at ¶¶ 2, 3; Doc. 34–4 ("Zhu Aff."), at ¶¶ 21–105; Doc. 34-5 ("Yin Aff."), at ¶¶ 19–63.

Plaintiffs move to conditionally certify a collective action in this suit pursuant to Section 216(b) of the FLSA. They submit a proposed Notice of Pendency and Consent to Sue Form ("Consent Form") for the Court's approval.[2] *See* Docs. 33, 34. In support of their motion for conditional certification, Plaintiffs include affidavits by Zhu and Yin containing the factual accounts summarized below.

---

[1] Plaintiffs allege that the two restaurants owned by Defendants—Matsu and Matsuri—constituted "joint employers" of Plaintiffs, as the two restaurants shared employees requiring them to do work for both restaurants. Compl. ¶ 16.

[2] Zhu submitted her notice to become a party plaintiff to the collective action on February 7, 2018. *See* Doc. 8. Yin submitted her notice to become a party plaintiff to the collective action on July 27, 2018. *See* Doc. 32.

### A. Zhu's Allegations

Zhu was employed as a packer at Matsu, one of Defendants' restaurants, from about November 1, 2012 to February 29, 2016.  Zhu's Aff., at ¶ 3.  As a packer, Zhu was required to pack the food that would be delivered to customers.  *Id.*, at ¶ 4.  Zhu alleges that from on or about January 1, 2012 to on or about December 31, 2014 she worked the following schedule at the restaurant (*id.*, at ¶ 9):

a. From 10:40 to 22:00 for 11 hours 20 minutes a day with a one-hour lunch break on Tuesday, Wednesday, Thursday, and Sunday;

b. From 10:40 to 23:00 for 12 hours and 20 minutes a day with a one-hour lunch break on Friday;

c. From 11:40 to 23:00 for 11 hours and 20 minutes a day with a one-hour lunch break on Saturday;

d. Zhu had Monday off.

Then, from on or about January 1, 2015 to on or about February 29, 2016, Zhu worked the following schedule (*id.*, at ¶ 10):

a. From 10:40 to 22:00 for 11 hours 20 minutes a day with a one-hour lunch break on Monday through Thursday;

b. From 10:40 to 23:00 for 12 hours and 20 minutes a day with a one-hour lunch break on Friday;

c. From 11:40 to 23:00 for 11 hours and 20 minutes a day with a one-hour lunch break on Saturday;

d. Zhu had Sundays' off.

In addition to her usual working schedule, as summarized above, Zhu was allegedly required to come in to work two or three times a week for an extra one or two hours in the morning when the restaurant was preparing for the "big orders."  *Id.*, at ¶ 12.  As a result, on average, Zhu contends that she worked approximately "seventy-two (72) hours per week" in total and had no

vacation or holiday time. *Id.*, at ¶¶ 13, 14. Although Zhu was allocated a one-hour lunch break on the days she worked, Zhu alleges that the break would be "cut short" if a delivery order required packing. *Id.*, at ¶ 15. Zhu was never given a dinner break. *Id.*, at ¶ 16.

Zhu states that during her employment with Defendants she was paid a flat compensation of $2,000 a month in two installments. *Id.*, at ¶ 17. The first installment of $1,000 was allegedly paid in cash in the middle of each month, while the second installment of $1,000 was paid by check at the end of each month. *Id.* Zhu contends that she was not paid overtime compensation for any hours worked in excess of 10 hours a day. *Id.*, at ¶ 18. Zhu also states that she has "never seen a notification, either in the form of poster notices or other means regarding overtime [pay] and wages" as required by the FLSA and CMWA. *See id.*, at ¶ 19.

Citing her personal observations and conversations with other employees, Zhu contends that it was Defendants' "policy" to pay their employees less than the minimum wage and little to no overtime compensation. *See id.*, at ¶ 69. For example, Zhu alleges that Dingding ("Ding"), one of the kitchen employees whom she befriended, had to frequently work overtime without receiving overtime compensation for all hours worked. *See id.*, at ¶ 25. Zhu alleges that, at least one day a week, Ding "would sleep overnight" at the restaurant "with package paper as a blanket" and wake up at 4:00 am the next day to start preparing for the big orders. *Id.*, at ¶¶ 28, 29. On such days, Ding would work until the end of his usual shift and resume his regular working hours the next day without being given any time off. *Id.*, at ¶ 29. Zhu alleges that Ding told her that he regularly worked about 74 hours a week and was paid "a little more than three thousand dollars ($3,000) a month." *See id.*, at ¶¶ 30–33. Although Ding was paid some overtime compensation, Zhu contends that Ding did not receive overtime pay for all the hours he worked in excess of 40 hours a week. *See id.*, at ¶¶ 31, 34.

Zhu alleges that other kitchen employees—Da Jiang, Sunny and Chef Song—complained to her about working similar hours as Ding and being similarly undercompensated. *See id.*, at ¶¶ 39–42, 49–58, 59–68. According to Zhu, Da Jiang, Sunny, and Chef Song had to sleep at the restaurant overnight at least one day a week when the restaurant had big orders without receiving overtime pay for all hours worked in excess of 40 hours a week. *See id.* at ¶¶ 47; 58; 66.

Zhu further contends that three waitresses, Rebecca, Tina and Anna, and one waiter, Andy, all of whom worked at the restaurant during Zhu's employment, were similarly undercompensated. Zhu alleges that Rebecca, Tina, Anna, and Andy were paid a base salary of $1000 dollars a month and would receive around $50–$100 in tips a day. *See id.*, at ¶ 76, 84, 91, 97. Zhu alleges that these employees were required to share a portion of their tips with other non-tipped employees and were paid less than the minimum wage in total compensation, even with tips included. *See* Zhu's Aff., at ¶¶ 72–79. Zhu contends that Rebecca, Tina, Anna, and Andy were paid less than the minimum wage and that, although they worked more than 40 hours a week, they did not receive any overtime compensation for any hours worked in excess of 40 hours a week. *See id.*, at ¶¶ 79, 86, 93, 99. Zhu states that she learned this information from the conversation she had with Rebecca, Tina, and Anna. *See id.*, at ¶¶ 75, 83, 90.

Based on these accounts, Zhu alleges that "it is Defendants' policy to not pay employees at least the minimum wage for each hour worked including not paying the employees at time and a half rate for their overtime hours," and that Defendants "exploited" Zhu and the other employees. *Id.*, at ¶ 69; 106.

**B. Yin's Allegations**:

Yin alleges that she was employed by Defendants as a waitress from about July 1, 2014 to November 30, 2015. Yin's Aff., at ¶ 3. Yin contends that, at all relevant times, she worked the following schedule (*id.*, at ¶¶ 9, 11):

   a. From 11:00 to 21:30 on Sunday, Monday, Wednesday and Thursday for 10 hours and 30 minutes a day, with a one-hour break;

   b. From 11:00 to 22:00 on Friday for 11 hours a day, with a one-hour break;

   c. From 15:00 to 21:30 or 22:00 for 6 hours and 30 minutes or 7 hours "either on a Saturday or a Sunday";

   d. Yin had Tuesday off.

Yin alleges that, in total, she worked "about fifty-nine (59) hours a week," and was paid a flat compensation of about $200 on a biweekly basis. *Id.*, at ¶¶ 12, 13. Yin states that she "was not given any paystubs for all the wages [she] received or any other documents about her wage." *Id.*, at ¶ 14. Yin alleges that she "was never required to punch in and out" while she was employed by Defendants and that she was paid less than the minimum wage and did not receive overtime compensation "for all the hours worked more than the regular hours." *See id.*, at ¶¶ 15, 16. Yin also states that she has "never seen a notification, either in the form of poster notices or other means regarding overtime [pay] and wages" as required by the FLSA and CMWA. *See id.*, at ¶ 17.

Yin alleges that, to her knowledge, it is Defendants' policy to pay employees less than the minimum wage, and that "it is Defendants' policy to not pay at time and a half rate for all the hours worked [in excess of] ten hours a day or forty hours a week." *Id.*, at ¶¶ 20, 21. Specifically, Yin alleges that she "befriended" other individuals employed by Defendants "who

were also not paid at least the minimum wage" and did not receive overtime compensation for all hours worked in excess of 10 hours a day or 40 hours a week. *See id.*, at ¶¶ 19, 20.

One of the employees that Yin befriended, a waiter Andy, allegedly was paid "at [a] flat rate of two hundred dollars ($200) half a month" while working a schedule that was similar to that of Yin. *See id.*, at ¶¶ 23–26. Yin alleges that Andy complained to her about not receiving overtime compensation for all hours "worked in excess of ten hours a day" and being paid less than the minimum wage. *See id.*, at ¶¶ 27–29. Yin contends that "Andy also mentioned that 10% of his tips were deducted and [were] required to be given to the employees in [the] kitchen who later would share [the tips] among themselves." *Id.*, at ¶30. Two other waiters that Yin befriended—Ada and Paul—allegedly shared the same experiences as Andy and recounted them to Yin. *See id.*, at ¶¶ 31–43. Yin also describes the accounts of four kitchen employees—Oscar, Dingding, Da Jiang, and Song—who complained about being underpaid and not receiving overtime compensation for all hours worked in excess of 40 hours a week. *See id.*, at ¶¶ 44–63.

Based on these accounts, Yin contends that Defendants "exploited" their employees and engaged in a policy of underpaying them. *See id.*, at ¶¶ 20, 21, 64.

## II.  DISCUSSION

Under the FLSA, employees may file a collective action on behalf of themselves and "other employees similarly situated" for violations of the minimum wage and overtime provisions of the FLSA. *See* 29 U.S.C. § 216(b); *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 179 (D. Conn. 2010). Unlike a Rule 23 class action, where potential class members are parties to the suit unless they affirmatively opt out, an FLSA collective action requires plaintiffs to affirmatively opt in to the suit to benefit from the judgment. *See* 29 U.S.C. § 216(b) ("[n]o employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is

brought"); *D'Antuono v. Serv. Road Corp.*, 789 F. Supp. 2d 308, 325 n.5 (D. Conn. 2011); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161 (S.D.N.Y. 2008).

To facilitate the opt-in process, district courts in their discretion may order a notice of the ongoing collective action to be sent to potential plaintiffs. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citing *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 169 (1989)); *Marcus v. Am. Contract Bridge League*, 254 F.R.D. 44, 47 (D. Conn. 2008). The process of facilitating notice of a collective action to potential opt-in plaintiffs is known as collective action certification.[3] *See Myers*, 624 F.3d at 555 n.10 (citing *Hoffmann–La Roche*, 493 U.S. at 169); *Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 215 (D. Conn. 2012).

To decide whether to certify a collective action, courts in the Second Circuit employ "a two-step method." *See Myers*, 624 F.3d at 555; *Zaniewski*, 848 F. Supp. 2d at 217; *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 111 (S.D.N.Y. 2015). At the first step—on a motion for conditional certification—the district court must determine whether there are any "similarly situated" potential plaintiffs who should receive notice of the pending action and have an opportunity to opt in. *Myers,* 624 F.3d at 555; *Zaniewski*, 848 F. Supp. 2d at 217; *Bittencourt*, 310 F.R.D. at 111. At the second step of the certification process, which occurs after the close of discovery, the court, "on a fuller record," must determine "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555; *Zaniewski*, 848 F. Supp. 2d at 217; *Bittencourt*, 310 F.R.D. at 112. If the opt-in plaintiffs are found not to be similarly situated, the class may be "de-certified" and "opt-in plaintiffs' claims may be dismissed without prejudice." *Bittencourt*, 310 F.R.D. at 112 (citing *Myers*, 624 F.3d at 555).

---

[3] It is worth noting that, unlike class action certification under Rule 23, certification of a collective action under Section 216(b) does not actually create a class of plaintiffs but is merely a "case management" device that facilitates notice to other potential opt-in plaintiffs. *See Myers*, 624 F.3d at 555 n.10 (citing *Hoffmann–La Roche*, 493 U.S. at 169).

The instant litigation is in the first stage of the certification process—Plaintiffs seek to conditionally certify the collective action, facilitate notice to similarly situated potential opt-in plaintiffs, and equitably toll the statute of limitations pending the expiration of the opt-in period. The Court begins by considering whether conditional certification should be granted.

### A. Plaintiffs' Request to Conditionally Certify Collective Action

For conditional certification to be granted, the named plaintiffs need only establish that there are other "similarly situated" potential plaintiffs. *See Myers*, 624 F.3d at 555; *Zaniewski*, 848 F. Supp. 2d at 217. To do so, the plaintiffs must make a "modest factual showing" that they, together with other employees, were "victims of a common policy or plan" that violated the FLSA. *Myers*, 624 F.3d at 555; *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 618 (D. Conn. 2007); *Bittencourt*, 310 F.R.D. at 112. Although a "modest factual showing" must rise above "unsupported assertions," it is "a low standard of proof," and the burden on the plaintiffs is "minimal." *See Myers*, 624 F.3d at 555; *Neary*, 517 F. Supp. 2d at 618 (describing the plaintiffs' burden at the conditional certification stage as "minimal").

Thus, in determining whether the plaintiffs' made the required showing, the court may not "weigh the merits of the underlying claims" by resolving "factual disputes," deciding "substantive issues" or making "credibility determinations." *See Aros*, 269 F.R.D. at 180; *accord Lassen v. Hoyt Livery Inc.*, No. 3:13–cv–01529 (JAM), 2014 WL 4638860, at *4 (D. Conn. 2014) ("At the conditional certification stage, the Court does not weigh evidence or resolve factual disputes . . ."); *Marcus*, 254 F.R.D. at 47 (noting that "the merits of plaintiffs' claims . . . are irrelevant to the conditional class certification inquiry"). Further, the court must "draw all inferences in favor of plaintiff[s]." *See Jeong Woo Kim v. 511 E. 5th Street*, LLC, 985

F. Supp. 2d 439, 446 (S.D.N.Y. 2013); *Contrera v. Langer*, 278 F. Supp. 3d 702, 715 (S.D.N.Y. 2017); *Warman v. Am. Nat'l. Standards Inst.*, 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016); *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012).

Accordingly, a collective action should be certified as long as the plaintiffs' allegations "are sufficient on their face" to support certification—even if such allegations conflict with the account asserted by the defendants. *See*, *e.g.*, *Jeong Woo Kim*, 985 F. Supp. 2d at 446, 449 (noting that "a defendant may not defeat the plaintiff's [conditional certification] motion by presenting conflicting factual assertions"); *Lassen*, 2014 WL 4638860, at *4 (concluding that "affidavits calling into some question plaintiff's factual claims are not controlling" at the conditional certification stage); *Marcus*, 254 F.R.D. at 47 (noting that plaintiff need only assert "a plausible basis for the claim" at the conditional certification inquiry); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 407 n.6 (S.D.N.Y. 2012) (stating that "courts in this Circuit regularly conclude that [the defendant's competing] declarations do not undermine the plaintiff's showing in the first stage of the conditional certification process."); *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160 (JPO), 2012 WL 260230, at *8 (S.D.N.Y. Jan. 27, 2012) (declining to weigh the parties' competing testimony at the preliminary certification stage of the litigation).

Further, the court may rely on hearsay evidence asserted by the plaintiffs to certify the collective action. *See*, *e.g.*, *Zaniewski*, 848 F. Supp. 2d at 221 ("On a motion for conditional certification courts in this Circuit regularly rely on hearsay evidence to determine the propriety of sending a collective action notice."); *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012) ("[C]ourts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice" to potential opt-in plaintiffs); *Lujan v. Cabana Mgmt.,* No. 10-cv-755, 2011 WL 317984, at *4 n.9, *6 (E.D.N.Y. Feb. 1, 2011) (noting that

courts do not strike hearsay statements on motion for conditional certification "given the 'modest factual showing' required at the notice stage").

In the instant case, conditional certification should be granted because Plaintiffs, through the affidavits submitted by Zhu and Yin, have made the "modest factual showing" that there are other "similarly situated" employees that have suffered from Defendants' "common policy or plan" that violated the FLSA. *See Myers*, 624 F.3d at 555. Specifically, Plaintiffs allege that Defendants paid their employees less than the minimum wage, withheld overtime compensation, and "refused to record" the hours worked by Zhu, Yin, and similarly situated employees, including the hours worked in excess of 40 hours a week or 10 hours a day. *See*, *e.g.*, Zhu's Aff., at ¶¶ 13, 17–18, 25–35, 66, 69; Yin's Aff., at ¶¶ 19–22; Compl. ¶¶ 2, 3. Citing their personal observations and conversations with other individuals employed by Defendants, including kitchen staff, waitstaff and deliverymen, Zhu and Yin thus sufficiently allege that it was Defendants' policy to pay their employees less than the minimum wage and withhold overtime pay for any hours worked in excess of 40 hours a week or 10 hours a day, in violation of the FLSA provisions. *See*, *e.g.*, 29 U.S.C. § 207(a)(1) (providing that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.").

Defendants' contention that Plaintiffs' allegations are "conclusory" or "not sufficiently detailed"[4] is without merit. Zhu, for example, alleges that she regularly worked over 70 hours a week without receiving overtime pay and that she had never received a notice of her pay rate. Zhu's Aff., at ¶¶ 13, 17–18, 20. Zhu also recounts that several kitchen employees—Ding, Da

---

[4] *See* Doc. 36, at 2, 8.

Jiang, Sunny and Chief Song—were similarly undercompensated despite the fact that they regularly worked over 70 hours a week and stayed at the restaurant overnight at least once a week in order to prepare for the big orders. *Id.* at ¶¶ 28–33, 39–42, 49–58, 59–68. Zhu contends that Ding, Da Jiang, Sunny and Chief Song each complained to her about their grueling working hours and Defendants' failure to pay the minimum wage and provide overtime compensation for their labor. *See id.* at ¶¶ 31, 34, 42, 55, 64, 67, 68. Zhu also alleges that three waitresses, Rebecca, Tina and Anna, and one waiter, Andy, all of whom were employed by Defendants during Zhu's employment, were similarly undercompensated. Citing to her conversations with these employees, Zhu alleges that they were paid less than the minimum wage and did not receive any overtime compensation for the hours worked in excess of 40 hours a week. *See id.* at ¶¶ 75, 79, 83, 86, 90, 93, 99.

Similarly, Yin alleges that she was paid less than the minimum wage and received no overtime compensation despite the fact that she regularly worked in excess of 40 hours a week. *See* Yin's Aff., at ¶¶ 12–16. Based on her personal experiences and conversations she had with other individuals employed by Defendants, Yin contends that it was Defendants' policy to pay their employees less than the minimum wage and withhold appropriate overtime compensation. *See id.* at ¶¶ 19–22. For example, Yin recounts her conversations with other waiters—Andy, Ada and Paul—who complained to Yin that they were paid less than the minimum wage and did not receive overtime pay. *See id.* at ¶¶ 25–27, 35–36, 40–43. Yin also recalls observing that kitchen employees Oscar, Ding, Da Jiang and Song were similarly undercompensated. *See id.* at ¶¶ 44–63. Plaintiffs, thus, sufficiently allege that they, together with other employees, were victims of Defendants' common policy of undercompensating their employees in violation of the FLSA.

Despite Defendants' assertion to the contrary, Zhu's and Yin's affidavits do not need to be supported by additional declarations from potential opt-in plaintiffs to establish that similarly situated plaintiffs do, in fact, exist. Courts routinely grant conditional certification based on the allegations contained in the complaint and affidavits submitted by the named plaintiffs. *See*, *e.g.*, *Cohen v. Gerson Lehrman Gr., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) (granting conditional certification based on the complaint and an affidavit submitted by the named plaintiff); *accord Colon v. Major Perry St. Corp.*, 2013 WL 3328223, at *6 (S.D.N.Y. July 2, 2013) ("it is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA"). Further, the fact that Plaintiffs' allegations may be based on hearsay "does not diminish their value" for the purposes of establishing that other similarly situated potential plaintiffs exist. *See Jeong Woo Kim*, 985 F. Supp. 2d at 448–49 (granting conditional certification where the plaintiff's affidavit relied "not only on his own observations, but on statements made by other potential opt-in plaintiffs, who allegedly told [the plaintiff] that they . . . never received overtime compensation"); *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 662 (S.D.N.Y. 2009) ("Defendants' argument that plaintiffs' declarations are comprised of . . . conclusory allegations based on impermissible hearsay is of no moment."); *accord Zaniewski*, 848 F. Supp. 2d at 221.

Defendants' contention that "Plaintiffs and potential collective members are not similarly situated" because they "worked in different positions, had different job responsibilities, and were paid differently" is similarly without merit. *See* Doc. 36, at 2, 12. As Plaintiffs correctly point out, potential opt-in plaintiffs may be similarly situated to the named plaintiffs "despite not occupying the same positions or performing the same job functions," "provided that they are

subject to a common unlawful policy or practice." *See Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 390 (S.D.N.Y. 2010) (concluding that conditional certification was appropriate "despite the variations of job positions" among the plaintiffs and the putative class members, because they all were subject to the same unlawful policies); *accord Tomkins v. Amedisys, Inc.*, 2014 WL 129407, *2–3 (D. Conn. Jan. 13, 2014). Thus, Plaintiffs' allegations that Defendants had a policy of refusing to pay their employees the minimum wage and overtime compensation—regardless of the job titles or responsibilities of these employees—is sufficient to show that the employees were similarly situated.[5] *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 263 F.R.D. 78, 83 (D. Conn. 2009) ("[a] collective action should be certified if, on balance, the differences among the plaintiffs do not outweigh the similarities in the practices to which they claim to have been subjected").

Nor does Plaintiffs' intent to include in the collective action not only salaried but also tipped employees—who might be exempt from the FLSA's minimum wage provisions—defeat conditional certification. Under the FLSA, "an employer may pay tipped employees an hourly rate less than the federal minimum wage" by "credit[ing] a portion of the actual amount of tips received by the employee against the required hourly minimum wage." *See Hart v. Rick's*

---

[5] It is worth noting that Plaintiffs are seeking to certify a collective action including the employees of both Matsu and Matsuri—the two restaurants owned by Defendants. *See* Doc. 34-2; Doc. 34-3, at 2. Plaintiffs assert that Matsu and Matsuri are "joint employers" of Plaintiffs and that the two establishments "share employees" and require them to work for both restaurants. Compl. ¶ 16. Notably, Defendants make no attempt to counter Plaintiffs' account or distinguish between Matsu and Matsuri employees—in short, Defendants do not argue that employees that worked at different locations are not similarly situated. However, even if Defendants had advanced such argument, the Court's analysis would not have changed, because individuals employed by the same defendants may be similarly situated even if they work at different locations—provided they were victims of the same policy that violated the FLSA. *See, e.g.*, *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) ("In this Circuit, courts have regularly found named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice"); *accord Hendricks*, 263 F.R.D. at 83. Because Plaintiffs allege that Defendants' policy of undercompensating their employees was implemented at both locations, Plaintiffs have made a "modest factual showing" that these employees are similarly situated. *See* Doc. 35, at 9.

*Cabaret Intern., Inc.*, 967 F. Supp. 2d 901, 933 (S.D.N.Y. 2013) (citing 29 U.S.C. § 203(m)) (internal quotation marks omitted). However, "an employer may not avail itself of the tip credit if it requires tipped employees to share their tips with employees who do not 'customarily and regularly receive tips.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) (citing 29 U.S.C. § 203(m)). In the instant case, Zhu and Yin allege that, in violation of the FLSA, the tipped employees were required to share a portion of their tips with non-tipped employees and were paid less than the minimum wage in total compensation, even with tips included. *See, e.g.*, Zhu's Aff., at ¶¶ 72–79; Yin's Aff., at ¶¶ 30–43. Plaintiffs also allege that the tipped employees, similar to the non-tipped employees, were denied overtime compensation for any hours worked in excess of 40 hours a week. *See id.* Thus, Plaintiffs allege that both tipped and non-tipped employees were victims of Defendants' common policy of undercompensating their employees in violation of the FLSA.

Defendants, however, argue that the instant collective action should not include both tipped and non-tipped employees because determining how the non-tipped employees were compensated "[would] require [an] individualized inquiry" that "is not suitable for a collective action." *See* Doc. 36, at 12. Despite Defendants' contention, conditional certification is appropriate even where the court would subsequently be required to conduct "individualized factual inquiries to determine whether or not [various employees] were exempt from the FLSA." *See Summa*, 715 F. Supp. 2d at 390. Because it is not appropriate to evaluate the merits of Plaintiffs' claims at the conditional certification stage, this Court need not conduct such an "individualized inquiry" now. *See Marcus*, 254 F.R.D. at 47; *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007) (noting that "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class

certification" because the court may, at the second step of the certification process following discovery, "decertify the class" upon its review of the fuller record). Rather, Plaintiffs need only assert "a plausible basis" for their claims—a "minimal" burden, which Zhu and Yin have clearly met by alleging that both tipped and non-tipped employees were similarly undercompensated as part of Defendants' common policy which violated the FLSA. *See Marcus*, 254 F.R.D. at 47; *Lynch*, 491 F. Supp. 2d at 368.

Accordingly, because Zhu's and Yin's allegations are sufficient to make a "modest factual showing" that Zhu and Yin, together with other individuals employed by Defendants, were victims of a common compensation policy that violated the FLSA, the Court conditionally certifies the collective action. The Court turns to considering whether Plaintiffs' proposed notice to potential opt-in plaintiffs is proper in form and substance.

**B. Notice to Potential Plaintiffs**:

Because the benefits of a collective action depend on employees receiving notice of its pendency "so that they can make informed decisions about whether to participate," district courts are encouraged to monitor the notice process and ensure that the proposed notice is "timely, accurate, and informative." *See Hoffmann–La Roche*, 493 U.S. at 170, 172; *Jeong Woo Kim*, 985 F. Supp. 2d at 451; *Lynch*, 491 F. Supp. 2d at 371. Court-facilitated notice also "protects plaintiffs' claims from expiring under the statute of limitations." *Lynch*, 491 F. Supp. 2d at 367 (citing *Hoffmann–La Roche*, 493 U.S. at 171–72).

In the instant case, Plaintiffs seek approval of a proposed Notice of Pendency and Consent Form in English, Chinese and Spanish—the predominant languages of the FLSA collective. *See* Doc. 35, at 10; Doc. 34-2. Plaintiffs request that a Notice of Pendency of this

collective action be provided to "current and former non-exempt employees employed [by Defendants] at any time from February 2, 2015 to the present." *See* Doc. 34-2. Defendants object to the proposed Notice of Pendency on multiple grounds. *See* Doc. 36, at 15–17.

### a. *Whether Plaintiffs' Proposed Notice Period is Proper*

First, the parties dispute whether the notice period proposed by Plaintiffs is proper in light of the FLSA's statute of limitations period. Plaintiffs contend that, because the complaint in this action was filed on February 2, 2018[6] and a three-year limitations period applies to willful violations under the FLSA, notice of this collective action should be given to any individual "employed by the Defendants from February 2, 2015 through the present." *See* Doc. 35, at 10–11. Defendants, however, contend that Plaintiffs' proposed time period would "result in solicitation of expired claims" because, under the FLSA, "the statute of limitations continues to run through the notice and opt-in period" and that, in order to toll it, "potential plaintiffs must opt in to the collective action." *See* Doc. 36, at 13. Thus, Defendants assert that "[a]n individual whose cause of action accrued on February 2, 2015 would have had to bring his claim by February 2, 2018, at the latest." *See id.*

Generally, the statute of limitations for an FLSA claim is two years. *See* 29 U.S.C. § 255(a). However, if a plaintiff alleges that the employer has willfully violated the FLSA, the applicable limitations period is three years. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citing 29 U.S.C. § 255(a)); *Marcus*, 254 F.R.D. at 49. An employer has willfully violated the FLSA if the employer either "knew" that its conduct was unlawful or showed "reckless disregard" for its unlawfulness. *See Kuebel*, 643 F.3d at 366; *Marcus*, 254 F.R.D. at 49 (citing *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)).

---

[6] *See* Doc. 1.

To trigger a three-year limitations period at the conditional certification stage, a plaintiff need only plead that the employer acted willfully. *See, e.g., Marcus*, 254 F.R.D. at 49 (concluding that the plaintiff's factual assertions as to the defendant's willfulness, as pleaded in the complaint, were sufficient to trigger a three-year limitations period); *Aros*, 269 F.R.D. at 181 (same). Even where "willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action." *See Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013); *accord Marcus*, 254 F.R.D. at 49 (applying a three-year limitations period despite the defendants' arguments that a two-year limitations period should apply); *Gaspar v. Pers. Touch Moving, Inc.*, 2014 WL 4593944, at *6 (S.D.N.Y. 2014) (concluding that a three-year limitations period was appropriate where the parties gave competing accounts as to the defendants' willfulness).

In the instant case, because Plaintiffs allege that Defendants willfully violated the FLSA, the applicable statute of limitations period is three years. *See* Compl. ¶¶ 2, 3; *Marcus*, 254 F.R.D. at 49; *Aros*, 269 F.R.D. at 181.

Notably, in an FLSA collective action, the statute of limitations continues to run with respect to each potential plaintiff's claim until that plaintiff files a "written consent" form opting in the suit. *See* 29 U.S.C. § 256; *Aros*, 269 F.R.D. at 181; *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198–99 (S.D.N.Y. 2006) ("only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled"). Because plaintiffs' written consents "do not relate back to the original filing date of the complaint," the filing of the complaint by the named plaintiff does not toll the statute of limitations as to each opt-in plaintiff's claim. *See* 29 U.S.C. § 256; *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) (citing *ABC Carpet*, 236 F.R.D. at 198–99); *see also McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d

438, 445 (S.D.N.Y. 2012) (noting that "the statute of limitations for each plaintiff runs when he or she files written consent . . . to join the lawsuit, not when the named plaintiff files the complaint"); *Aros*, 269 F.R.D. at 181 (acknowledging that the written consent requirement "is not satisfied by the filing of the complaint itself") (internal citation omitted).

Nevertheless, at the conditional certification stage, courts frequently authorize a more inclusive notice period that "dates back to three years before the filing of the original complaint"—despite the fact that the statute of limitations runs on the opt-in plaintiffs' individual claims until they formally consent to join the suit. *See*, *e.g.*, *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 n.3 (S.D.N.Y. 2007); *Jeong Woo Kim*, 985 F. Supp. 2d at 452; *Gaspar*, 2014 WL 4593944, at *7(citing 29 U.S.C. § 256(b)). Courts frequently permit a more inclusive notice period at the certification stage. Judges are mindful of the possibility that "opt-in plaintiffs with untimely claims may have colorable equitable tolling arguments." *See Yap*, 146 F. Supp. 3d at 565; *Gaspar*, 2014 WL 4593944, at *7. For instance, a more inclusive notice period should apply if the limitations period may be tolled because of the defendants' failure to post the workplace notices, as required by the FLSA. *See Baba v. Grand Ctr. P'ship, Inc.*, No. 99–cv–5818, 2000 WL 1808971, at *2 (S.D.N.Y. Dec. 8, 2000) (explaining that "failure to post the required notice equitably tolls the statute of limitations unless and until an employee has actual notice of his rights"); *Gaspar*, 2014 WL 4593944, at *7 (concluding that "the three-year limitations period should extend from the date of the filing of Plaintiff's complaint" because the defendants alleged failure to post the workplace notices required by the FLSA "implicate[d] equitable tolling").

Additionally, "significant delay" in ruling on the conditional certification motion may warrant a more inclusive notice period because such delay provides "a particularly strong basis for potential equitable tolling" arguments. *See, e.g.*, *Yap*, 146 F. Supp. 3d at 565 (noting that "the delay in ruling on a motion for conditional approval, coupled with the plaintiffs' diligence and avoiding prejudice to potential plaintiffs," may be "enough to grant equitable tolling"); *Morrison v. Ocean State Jobbers, Inc.*, 180 F. Supp. 3d 190, 198–99 (D. Conn. 2016) (noting that the delay in a court's ruling on a conditional certification motion "may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine" if such delay rises above "a normal litigation delay"); *accord Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 528 (S.D.N.Y. 2015).

Even if the notice period is set to extend from the date of the filing of the plaintiffs' complaint, the defendants may still challenge the timeliness of the individual opt-in plaintiffs' claims at the second stage of the certification process, after the close of discovery. *See Yap*, 146 F. Supp. 3d at 565; *Fasanelli*, 516 F. Supp. 2d at 323. For example, in *Fasanelli*, in order to avoid "merit-based determinations" at the conditional certification stage, the court, "out of an abundance of caution," adopted a "more inclusive" notice period, authorizing the plaintiffs to obtain information regarding individuals that were employed within the three years "from the filing of Plaintiff's Complaint." *Fasanelli*, 516 F. Supp. 2d at 323. The court, however, noted that "[s]pecific challenges to the timeliness of [each plaintiff's] claims . . . [could] be addressed after the completion of discovery during the second phase of the collective action certification process." *Id.* at 323.

Accordingly, while Defendants are correct that Plaintiffs' proposed notice period might "result in solicitation of expired claims,"[7] a notice period broader than the limitations period is appropriate at this stage of the litigation. Adopting a more inclusive notice period would help avoid making preliminary determinations regarding the viability of each plaintiffs' individual claims and would ensure that opt-in plaintiffs with untimely claims but "colorable equitable tolling arguments" receive adequate notice of the instant action. *See Yap*, 146 F. Supp. 3d at 565; *Guzman*, 117 F. Supp. 3d at 528; *Fasanelli*, 516 F. Supp. 2d at 323. For example, opt-in plaintiffs with otherwise untimely claims might argue that the statute of limitations should be equitably tolled because, as Zhu and Yin allege, Defendants failed to post the workplace notices in violation of the FLSA. *See Gaspar*, 2014 WL 4593944, at *7; Yin's Aff. at ¶ 17; Zhu's Aff. at ¶ 19. The delay in ruling on this motion, which Plaintiffs filed on September 1, 2018, followed by exchanges of extensive briefs of counsel, may constitute an additional ground for Plaintiffs to seek equitable tolling of the limitations period in this action. *See Morrison*, 180 F. Supp. 3d at 198; *Yap*, 146 F. Supp. 3d at 565. Thus, adopting a more inclusive notice period suggested by Plaintiffs is appropriate—especially since Defendants will have an opportunity to challenge the timeliness of each plaintiff's claims "after the completion of discovery during the second phase of the collective action certification process." *Fasanelli*, 516 F. Supp. 2d at 323; *Yap*, 146 F. Supp. 3d at 565.

Therefore, and in line with the existing precedent, the Court finds that notice should be provided to all current and former non-exempt individuals employed by Defendants at any time between February 2, 2015 and the date of this Order. *See Whitehorn*, 767 F. Supp. 2d at 451 (ordering a notice period encompassing the three years prior to the filing of the complaint

---

[7] *See* Doc. 36, at 13.

because the plaintiffs indicated that equitable tolling may extend the limitations period for certain plaintiffs, and noting that "challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date").

### b. Contents of Plaintiffs' Proposed Notice of Pendency and Consent Form

Defendants object to the contents of Plaintiffs' proposed Notice of Pendency on several grounds. *See* Doc. 36, at 15–17.

First, Defendants contend that Plaintiffs' proposed Notice of Pendency does not disclose sufficient information regarding Plaintiffs' counsel's "fees and costs." *See id.* at 15. The Court disagrees. A collective action notice must include a statement informing potential opt-in plaintiffs of any fee arrangement, to which the named plaintiffs and their counsel agreed to and which may impact the opt-in plaintiffs' recovery. *See Fasanelli*, 516 F. Supp. 2d at 324; *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *8 (S.D.N.Y. Sept. 16, 2013). In the instant case, Plaintiffs' proposed Notice of Pendency provides sufficient information regarding the impact of costs and fees on any potential recovery received by the opt-in plaintiffs. Specifically, Notice of Pendency provides that "costs and fees will be paid out of any settlement or money judgment the class receives against Defendants," and that, "[i]f there is no settlement or money judgment, Plaintiffs' counsel will not receive any fee." *See* Doc. 34-2. Accordingly, the information provided in the proposed Notice of Pendency is sufficient and Plaintiffs need not make any further modifications to it.

Second, Defendants contend that, although the proposed Notice of Pendency directs potential opt-in plaintiffs to mail Consent Forms to Plaintiffs' counsel, Consent Forms "should instead be mailed to the Clerk of Court." *See* Doc. 36, at 16.

Courts in this Circuit are split on whether the opt-in plaintiffs should mail their consent forms to the named plaintiffs' counsel or to the Clerk of Court. *Compare, e.g.*, *Djurdjevich v. Flat Rater Movers, Ltd*., No. 17-cv-261 (AJN), 2019 WL 125888, at *2 (S.D.N.Y. Jan. 7, 2019) (directing the consent forms to be returned to the plaintiff's counsel because the plaintiff's counsel was "in a better position to answer potential questions" by the opt-in plaintiffs and the proposed notice informed potential plaintiffs that they could retain other counsel of their choice), *with Pérez v. La Abundancia Bakery & Rest. Inc.,* 17-CV-0656 (RLM), 2017 WL 3382068, at *9 (E.D.N.Y. Aug. 4, 2017) (directing the consent forms to be mailed to the Clerk of the Court because "directing opt-in plaintiffs to return their forms to plaintiffs' counsel implicitly discourages opt-in plaintiffs from selecting other counsel") (internal citations omitted).

Where the proposed notice or consent form expressly informs putative plaintiffs of their "right to retain separate counsel," the courts are more inclined to permit putative plaintiffs to return their consent forms to the named plaintiff's counsel. *See Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 128 (S.D.N.Y. 2014); *Djurdjevich*, 2019 WL 125888, at *2; *Mason v. Lumber Liquidators, Inc.*, No. 17-cv-4780 (MKB), 2019 WL 2088609, at *15 (E.D.N.Y. May 13, 2019) ("[W]here, as here, the Notice to the collective expressly states that opt-ins have the right to retain separate counsel, the risk that opt-in plaintiffs will be discouraged from selecting their own counsel is 'de minimis at best.'") (internal citations omitted).

Further, as some courts have recognized, returning consent forms to the Clerk of Court may be "unnecessary" and "burdensome" to the Court "in light of the budgetary constraints and financial limitations faced by the federal courts." *See Nahar v. Dozen Bagels Co. Inc.*, No. 15-CV-1613 (ALC) (FM), 2015 WL 6207076, at *7 (S.D.N.Y. Oct. 20, 2015); *Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 257 (E.D.N.Y. 2014); *Ritz v. Mike Rory Corp.*, No. 12 CV

367(JBW), 2013 WL 1799974, at *4 (E.D.N.Y. Apr. 30, 2013) (directing that the consent forms be returned to the plaintiff's counsel "[i]n order to minimize the burden on opt-in plaintiffs who choose representation by plaintiff's counsel, and to reduce the administrative burden on the court."). Thus, requiring potential plaintiffs to return their consent forms to the named plaintiffs' counsel may be "the more practicable and efficient method of opting in." *Dilonez*, 35 F. Supp. 3d at 257.

In the instant case, Plaintiffs' proposed Consent Form informs putative plaintiffs of their "right to hire an attorney of [their] choice"—"a factor which mitigates any problems associated with having consent forms returnable to Plaintiff's counsel." *See Schear*, 297 F.R.D. at 128. Thus, because "the risk that opt-in plaintiffs will be discouraged from selecting their own counsel is 'de minimis,'"[8] the Court grants Plaintiffs' request that potential plaintiffs be directed to send their Consent Forms to Plaintiffs' counsel—especially since doing so would reduce the burden on the court, at a time of increased concern about institutional costs of operation. *See Nahar*, 2015 WL 6207076, at *7; *Dilonez*, 35 F. Supp. 3d at 257; *Ritz*, 2013 WL 1799974, at *4; *Djurdjevich*, 2019 WL 125888, at *2.

Third, Defendants argue that Plaintiffs' proposed opt-in period of 90 days is "excessive." *See* Doc. 36, at 16.

Generally, courts have held that a 60-day opt-in period for potential plaintiffs is common practice under the FLSA. *See, e.g., Lassen*, 2014 WL 4638860, at *7 (ordering a 60-day opt-in period absent a showing that there will be unusual difficulties locating or contacting potential opt-in plaintiffs); *Marsh v. Tauck Inc.*, No. 3:04CV220 (WWE), 2005 WL 1221626, at *1 (D. Conn. June 9, 2005) (ordering a 60-day opt-in period); *Diaz v. S & H Bondi's Department Store,*

---

[8] *Mason*, 2019 WL 2088609, at *15.

*Inc.*, No. 10 Civ. 7676 (PGG), 2012 WL 137460 , at *8 (S.D.N.Y. Jan. 18, 2012) (ordering a 60-day opt-in period and noting that many courts in the district ordinarily set a 60-day period); *Whitehorn*, 767 F. Supp. 2d at 452 (ordering a 60-day opt-in period). While courts may sometimes adopt a 90-day opt-in period, "they generally do so where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Compare Fang v. Zhuang*, No. 10–CV–1290, 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010) (providing for a 90-day opt-in period "in light of the frequent, long-term international travel of many of the prospective plaintiffs"), *with Whitehorn*, 767 F. Supp. 2d at 452 (ordering a 60-day opt-in period because the plaintiffs did not establish that "the circumstances of [the] case require[d] an extended period" or that "60 days would be insufficient").

In the instant case, Plaintiffs have made no showing that a 60-day opt-in period would not provide an adequate opportunity for potential plaintiffs to join in the collective action, or that a longer opt-in period is warranted because it might be challenging to locate or contact prospective plaintiffs. Therefore, a 90-day opt-in period is unwarranted under the instant circumstances, and the opt-in period will be set to 60 days, in conformity with the existing precedent in this Circuit. The Court, however, may entertain opt-in plaintiffs' untimely motions to join the collective action "on a showing of good cause for the delay."[9] *See Whitehorn*, 767 F. Supp. 2d at 452 (ordering a 60-day opt-in period but agreeing to entertain untimely motions to opt-in "on a showing of good cause for the delay"). Plaintiffs are required to modify the proposed Notice of Pendency and Consent Form to provide for a 60-day opt-in period.

---

[9] Specifically, Plaintiffs request that "should a significant number of Notices [sent by mail] be returned as undeliverable with no forwarding address, Plaintiffs must consent to join the action within ninety (90) days from the date notice is mailed." *See* Doc. 34-3. If and when such issue arises, the Court may entertain the untimely motions to join the collective action upon a showing of good cause.

Finally, Plaintiffs' request to translate and distribute the Notice of Pendency and Consent Form in Chinese and Spanish, the predominant languages of the collective class,[10] is granted as district courts routinely grant such requests in light of the prospective plaintiffs' backgrounds. *See Fang*, 2010 WL 5261197, at *4; *Cuzco v. Orion Builders, Inc.,* 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007); *accord Valerio v. RNC Industries, LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016). As such, Plaintiffs may distribute the Notice of Pendency and Consent Form in English, Chinese and Spanish. Plaintiffs are directed to modify the contents of the proposed Notice of Pendency and Consent Form in accordance with the above holdings.

### c. *Discovery of Names and Contact Information of Potential Opt-In Plaintiffs*

To further facilitate notice to potential opt-in plaintiffs, Plaintiffs also request that Defendants produce "the names, last known address, telephone numbers, e-mail addresses and dates of employment of all non-exempt employees employed by the Defendants from February 2, 2015 through the present, in a Microsoft excel spreadsheet." *See* Doc. 35, at 10–11.

At the notice stage in FLSA collective actions, plaintiffs are generally permitted to discover contact information of similarly situated employees—including their names, addresses, telephone numbers, and dates of employment. *See, e.g.*, *Jeong Woo Kim*, 985 F. Supp. 2d at 452 (ordering the defendants to produce within 14 days from the entry of such order "a list . . . setting forth [the] names, addresses, compensation rates, telephone numbers, and dates of employment" of potential plaintiffs); *Lynch*, 491 F. Supp. 2d at 371 (ordering the defendants to produce a list containing information regarding similarly situated employees within 5 days from the entry of the notice order), *Khamsiri v. George & Frank's Japanese Noodle Restaurant Inc.*,

---

[10] Both Zhu and Yin allege that, to their knowledge, most of Defendants' employees can only speak and understand Chinese, and that there is at least one employee who can only speak and understand Spanish. *See* Zhu's Aff., at ¶ 7; Yin's Aff., at ¶¶ 6, 7.

2012 WL 1981507, at *2 (S.D.N.Y. 2012) (ordering the defendants to produce a list containing information regarding similarly situated employees "within 15 days from the entry of [the] Order").

Further, the format in which Plaintiffs seek to obtain the information regarding similarly situated employees—in a form of an Excel spreadsheet—has been deemed appropriate by the courts in this Circuit. *See*, *e.g.*, *Jeong Woo Kim*, 985 F. Supp. 2d at 452 (ordering that the list of employees be produced "in Excel format"); *Lynch*, 491 F. Supp. 2d at 371 (ordering that the list of employees be produced in "electronic and importable format"); *Khamsiri v. George & Frank's Japanese Noodle Restaurant Inc.*, 2012 WL 1981507, at *2 (S.D.N.Y. 2012) (ordering the defendants to produce "a computer-readable list" of employees).

Consistent with this line of authority, Defendants are ordered to produce a list containing information regarding "all non-exempt employees employed by the Defendants from February 2, 2015 through the present."[11] *See*, *e.g.*, *Jeong Woo Kim*, 985 F. Supp. 2d at 452 (ordering the defendants to produce information regarding any similarly situated employees that were employed within a three-year period from the filing of the original complaint, where a three-year limitations period applied).

Accordingly, within 15 days from the entry of this Order, Defendants will produce to Plaintiffs a list of names, last known address, telephone numbers, e-mail addresses and dates of employment of all non-exempt employees employed by the Defendants from February 2, 2015 through the present, in a Microsoft excel spreadsheet. *See Jeong Woo Kim*, 985 F. Supp. 2d at 452 (ordering the defendants to produce information regarding similarly situated employees within 14 days from the entry of the notice order), *Khamsiri v. George & Frank's Japanese*

---

[11] Doc. 35, at 11.

*Noodle Restaurant Inc.*, 2012 WL 1981507, at *2 (S.D.N.Y. 2012) (ordering the defendants to produce information regarding similarly situated employees "within 15 days from the entry of [the] Order").

### d.  The Manner in Which Notice Should Be Provided

Plaintiffs request the Court to authorize the posting of the Notice of Pendency and Consent Form in conspicuous locations at Defendants' restaurants.  *See* Doc. 35, at 10.  "Such posting at the place of employment of potential opt-in plaintiffs is regularly approved by Courts," even where potential opt-in plaintiffs will also be notified by mail.  *See Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545, 564 (S.D.N.Y. 2013); *Jeong Woo Kim*, 985 F. Supp. 2d at 452; *Whitehorn*, 767 F. Supp. 2d at 449.  Therefore, this request is granted.

Plaintiffs also request authorization to send by first class mail Notice of Pendency and Consent Forms to the similarly situated employees identified by Defendants in the Excel spreadsheet containing contact information regarding "all non-exempt employees employed by the Defendants from February 2, 2015 through the present."  *See* Doc. 35, at 11.  Plaintiffs propose to mail Notice of Pendency and Consent Forms to such employees "[w]ithin twenty-one (21) days after receipt of a complete and accurate . . . Excel spreadsheet."  *See* Doc. 34-3.  This request is, likewise, granted, in accordance with the practice of other courts in this Circuit.  *See, e.g.*, *Trinidad*, 962 F.Supp.2d at 564 (ordering both posted notice and first-class mailed notice to potential plaintiffs); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 338 (W.D.N.Y. 2008) (same).

Additionally, Plaintiffs request that, should Defendants fail to furnish a complete list of similarly situated individuals employed between February 2, 2015 and present, or should "more than 20% of Notices be returned as undeliverable with no forwarding address, Plaintiff reserves

the right to apply to the Court for permission to cause a copy of the Notice of Pendency . . . to be published in an English, Spanish and Chinese language newspaper at Defendants' expense for Defendants' failure to furnish accurate addresses." *See* Doc. 34-3. In accordance with this request, should any of the above issues arise, Plaintiffs may apply to the Court for a permission to publish the Notice of Pendency.

### C. Equitable Tolling of the Statute of Limitations Period Until the Expiration of the Opt-In Period

Plaintiffs also request that "the statute of limitation on this suit be tolled for 90 days until the expiration of the opt-in period." *See* Doc. 35, at 13. Plaintiffs argue that such tolling is justified because "unnecessary delays are of particular concern," given that the FLSA's limitations period continues to run on each plaintiff's claim until that plaintiff opts in. *See id.*

The statute of limitations may be equitably tolled "in rare and exceptional circumstances" where such tolling is "necessary as a matter of fairness." *See Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (internal quotation marks omitted). To qualify for equitable tolling, plaintiffs must establish that "extraordinary circumstances" prevented them from filing their claims on time, and that they acted with "reasonable diligence" throughout the period they seek to toll. *See Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014); *Phillips*, 723 F.3d at 150.

As discussed above, although the court may account for the plaintiffs' colorable equitable tolling arguments when defining the appropriate notice period, the equitable tolling determinations are premature before the close of the opt-in period. *See, e.g.*, *Yap*, 146 F. Supp. 3d at 566; *Whitehorn*, 767 F. Supp. 2d at 449–50; *Mendoza*, 2013 WL 5211839, at *10; *Thompson v. World All. Fin. Corp.*, No. 08 Civ. 4951(AKT), 2010 WL 3394188, at *7 (E.D.N.Y.

Aug. 20, 2010). Only after all potential plaintiffs opt in the collective action may the Court consider whether any opt-in plaintiffs are barred from the collective action due to a delay in notice. *See Yap*, 146 F. Supp. 3d at 566; *Whitehorn*, 767 F. Supp. 2d at 449–50; *Mendoza*, 2013 WL 5211839, at *10; *Thompson*, 2010 WL 3394188, at *7.

For example, in *Yap*, the plaintiffs requested that the statute of limitations be tolled for 90 days until the expiration of the opt-in period—an identical request to the one made by Plaintiffs in this case. *Yap*, 146 F. Supp. 3d at 566. The court, reasoning that it was "not yet clear whether or not any potential plaintiffs [would] be barred from [the] action due to a delay in notice," concluded that "the determination as to the timeliness of each future plaintiff's [claim] is better reserved for a future proceeding" after the end of the opt-in period. *See id.* Further, the court noted that postponing an equitable tolling determination until a future date would allow the parties an opportunity to brief the issue in light of the court's "significant delay" in deciding the certification motion, because such delay might weigh in favor of granting equitable tolling. *See id.* The court thus denied the plaintiffs' request to toll the statute of limitations on motion for conditional certification but noted that "individual plaintiffs may seek [equitable] tolling upon opting-in and demonstrating its applicability to his or her case." *Id.*

Similarly, in *Mendoza*, after authorizing a more inclusive notice period due to equitable tolling considerations, the court deferred the actual equitable tolling determination until future proceedings. *See Mendoza*, 2013 WL 5211839, at *10. The court reasoned that individual opt-in plaintiffs with expired claims may seek equitable tolling "as it may apply to them" only "after the [close of the] opt-in period." *See id.* Other courts in this Circuit have reached analogous results. *See Whitehorn*, 767 F. Supp. 2d at 449–50 (noting that the plaintiffs' request to toll the statute of limitations was "premature" at the notice stage but that individual plaintiffs would be

able to demonstrate whether the statute of limitations should be tolled after opting in); *Thompson*, 2010 WL 3394188, at *7 (permitting the plaintiffs to provide notice of the collective action to potential members employed within three years of the filing of the complaint, but declining to toll the statute of limitations until future proceedings).

Accordingly, the Court reserves determination on Plaintiffs' equitable tolling request until after the end of the opt-in period. Although the equitable tolling determination is premature at this stage of the litigation, the Court may evaluate the timeliness of each plaintiff's individual claims on a fuller record at the second step of the certification process.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs' motion for conditional certification. (Doc. 33).  The Court makes this Order:

1.  The Court ORDERS CONDITIONAL CERTIFICATION of this case as an FLSA COLLECTIVE ACTION on behalf of all current and former non-exempt employees employed by Defendants at any time from February 2, 2015 to the date of this Order.

2.  To participate in this action, current and former employees of Defendants must opt in to the action in a manner consistent with this Ruling.

3.  Defendants are ORDERED, within fifteen (15) days of this Order, to produce a list of the names, addresses, compensation rates, telephone numbers, and dates of employment of all non-exempt employees employed by the Defendants from February 2, 2015 to the date of this Order in an Excel format.

4.  Plaintiffs and Defendants are ORDERED to meet and confer on newly-revised Notice of Pendency and Consent Form that incorporate the Court's rulings above.  The parties should submit joint proposed Notice of Pendency and Consent Form to the Court for final approval

within fifteen (15) days of this Order.  The parties are also directed to attempt to agree, in mutual good faith, on conspicuous locations within Defendants' restaurants that are suitable for the posting of Notice of Pendency and Consent Form, failing which the Court will determine the locations.

It is **SO ORDERED**.

Dated:          January 2, 2020.
                New Haven, Connecticut


_/s/ Charles S. Haight, Jr._
CHARLES S. HAIGHT, JR.
Senior United States District Judge