## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Gui Zhen Zhu, *et al.*, | |
| Plaintiffs, | Civil No. 3:18-CV-00203 (CSH) |
| v. | |
| Matsu Corp., *et al.*, | July 27, 2023 |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

This is an action under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. §§ 31-68 *et seq.* (*See generally* Pls.' Am. Compl., ECF No. 82.)  The Plaintiffs, Gui Zhen Zhu and Rong Jiao Yin ("Plaintiffs"), worked for the Defendants, Matsu Corp., Matsu Grill Co. LLC, Kimming Marty Cheng, and Ziqiao Cao ("Defendants"), at Matsu, a restaurant in Westport, Connecticut.  (*Id.* ¶¶ 9-49.)  They allege that the Defendants "fail[ed] to pay [their] employees, including Plaintiff[s], minimum wage [and] overtime compensation for all hours worked over forty (40) each workweek."  (*Id.* ¶ 2.)  The Plaintiffs seek unpaid minimum wages, unpaid overtime wages, liquidated damages, prejudgment interest, and attorney's fees.  (*Id.* ¶¶ 4-5.)

After the Defendants' lawyers repeatedly represented that the Defendants were not cooperating with counsel and had substantial unpaid legal bills (*see* ECF Nos. 55-1, 69), Senior United States District Judge Charles S. Haight, Jr. permitted them to withdraw.  Judge Haight struck the Defendants' answer and entered a default judgment against them as a sanction for disobeying multiple court orders, ignoring deadlines, and failing to retain successor counsel

despite multiple warnings.  (ECF No. 80, at 21-26; ECF No. 81.)  He then referred the case to me – United States Magistrate Judge Thomas O. Farrish – for a recommended ruling on the Plaintiffs' motion for default judgment and to make a recommendation on the damages to be awarded.  (ECF Nos. 95, 99, 100.)

For the reasons that follow, and as set forth more fully in Section IV below, I recommend that:

A.  Judgment enter in favor of the Plaintiff Gui Zhen Zhu in the amount of $30,941.40;

B.  Judgment enter in favor of the Plaintiff Rong Jiao Yin in the amount of $20,309.42;

C.  Each of the aforementioned judgments enter jointly and severally against each of the four Defendants;

D.  The Plaintiffs be awarded attorneys' fees in the amount of $28,906.50; and

E.  The Plaintiffs be awarded costs in the amount of $1,304.03.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Ms. Zhu first filed this lawsuit on February 2, 2018, "on behalf of herself and others similarly situated."  (Compl., ECF No. 1.)  She alleged that she worked as a packer at the Matsu restaurant at 33 Jessup Road in Westport, Connecticut from November 2012 through February 29, 2016.  (*Id.* ¶¶ 9, 26.)  She styled her complaint as a "29 U.S.C. § 216(b) Collective Action & Fed. R. Civ. P. 23 Class Action."  (*Id.* at 1.)  On the same day, Plaintiff's local counsel, Attorney Gary Phelan of Mitchell & Sheahan, filed a motion for Attorney John Troy of the Troy Law Firm to be admitted *pro hac vice*.  (ECF No. 2.)  Judge Haight granted the motion (ECF No. 7), and Attorney Troy filed a notice of appearance on June 26, 2018.  (ECF No. 28.)

Ms. Zhu sued Matsu Corp. and Matsu Grill, the entities that owned the restaurant.  (*See id.* ¶ 16.)  She alleged that the companies were subject to the FLSA because they were businesses

engaged in interstate commerce with gross sales exceeding $500,000 per year.  (*Id.* ¶¶ 11-17.)  She also sued two "owner/operator defendants," Kimming Marty Cheng and Ziqiao Cao.  She claimed that Messrs. Cheng and Cao "had the power to hire and fire employees," "supervised and controlled employee work schedules or conditions of employment," "determined the rate and method of payment," and "maintained employee records."  (Compl., ECF No. 1, ¶¶ 18, 21.)

Ms. Zhu alleged that the Defendants violated the minimum wage provisions of the CMWA, Conn. Gen. Stat. §31-62.  (*Id.* ¶ 54.)  She also alleged that the Defendants violated the overtime provisions of the FLSA and the CMWA, 29 U.S.C. § 207 and Conn. Gen. Stat. § 31-76c.  (*Id.* ¶¶ 47-51, 60-66.)  She sought "[a]n award of unpaid minimum wage [and] overtime wages . . . under FLSA and CMWA," "[a]n award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly wage [and] overtime compensation . . . pursuant to 29 U.S.C. § 216," an award of reasonable attorney's fees, and other items of relief on behalf of herself and "on behalf of the FLSA Collective and Rule 23 Class."  (*Id.* at 17.)

On March 31, 2018, Attorney Elio C.C. Morgan appeared for the Defendants (ECF No. 11) and filed an answer to the Complaint.  (ECF No. 13.)  In their answer, the Defendants generally denied the material allegations of the complaint, including the allegations about Messrs. Cheng and Cao's control over wages and hours, but did admit that Matsu Corp. was engaged in interstate commerce and had gross sales exceeding $500,000 a year.  (*See generally id.* & ¶¶ 11, 18, 22.)  The Defendants also asserted several affirmative defenses, including compliance with the law, good faith, failure to mitigate damages, and the FLSA statute of limitations.  (*Id.* at 8-10.)

Shortly after appearing, Attorney Morgan filed a motion to withdraw because the Defendants had retained new counsel.  (ECF Nos. 24, 27.)  The Court granted his motion, and on

3

June 18, 2018, Attorney Anne Casey LeVasseur of Lennon, Murphy & Phillips, LLC filed a notice of appearance on behalf of the Defendants and a Motion for Attorney Benjamin B. Xue to be admitted *pro hac vice*.  (ECF Nos. 21, 22.)  The Court granted the motion and Attorney Xue filed a Notice of Appearance on June 20, 2018.  (ECF Nos. 23, 25.)  Additionally, on May 6, 2019, Attorney Kevin J. Lennon, also of Lennon, Murphy & Phillips filed a notice of appearance on behalf of the defendants.  (ECF No. 48.)

Ms. Yin joined the case on July 27, 2018, filing a notice of Consent to Become Party Plaintiff.  (ECF No. 32.)  The Plaintiffs then subsequently moved to have their case recognized as an FLSA collective action, and for certification of a Rule 23 class encompassing all individuals who were employed by the Defendants in any tipped or non-tipped non-exempt position during a two-year period preceding the certification.  (ECF Nos. 33, 39, 40, 40-3.)  Attorney John Troy filed a notice of appearance on behalf of Rong Jiao Yin on September 9, 2019.  (ECF No. 51.)  Attorney Aaron B. Schweitzer, also of the Troy Law firm, also filed a notice of appearance on behalf of both Plaintiffs on April 16, 2021.  (ECF No. 77.)

The Defendants' relationship with their attorneys then began to deteriorate.  On November 6, 2019, Attorneys Xue and Lennon moved to withdraw as counsel, representing that they had had difficulty communicating with the Defendants for months and that the Defendants owed over $33,828 in unpaid legal fees.  (ECF No. 55-1.)  They also stated that the Defendants were looking for new counsel, and they moved for a stay of thirty days.  (*Id.* at 4.)  Judge Haight granted the motion to withdraw on November 7, 2019, but he denied the motion for a stay because Attorney LeVasseur still had an appearance in the matter.  (ECF No. 57.)

On January 2, 2020, Judge Haight granted the Plaintiffs' Motion to Certify a Collective Action under the FLSA and ordered conditional certification of the case as an FLSA collective

action.  (ECF No. 59.)  He ordered the Defendants to produce within fifteen days a list of the names, addresses, compensation rates, telephone numbers, and dates of employment of all non-exempt employees employed by the Defendants from February 2, 2015, to the date of the order. (*Id.* at 27.)

Attorney LeVasseur then moved to terminate her appearance on January 17, 2020, explaining that she no longer worked at Lennon, Murphy & Phillips.  (ECF No. 60.)  The Plaintiffs opposed the motion, arguing that Attorney LeVasseur had not demonstrated that she notified the Defendants of her intention to withdraw, and moved to compel the Defendants to produce the list of employees.  (ECF No. 61.)  In her response, Attorney LeVasseur explained that she had left Lennon, Murphy & Phillips for another firm several months before Attorneys Xue and Lennon moved to withdraw, and as a result she had had no interaction with the Defendants in nearly a year and did not have authority to represent the Defendants.  (ECF No. 62.)

Judge Haight denied the motion to withdraw, primarily because Attorney LeVasseur had not shown that she notified the Defendants that she intended to withdraw.  (ECF No. 63.)  He then stayed the action pending the filing of a notice of appearance by Defendants' successor counsel. (*Id.*)  He ordered the Defendants to file a notice of appearance for successor counsel by February 28, 2020 (*id.* at 5), and he also extended the Defendants' deadline to comply with the January 2, 2020 order to produce a list of employees until March 13, 2020, since the corporate Defendants would not be able to comply with the order until they were represented by successor counsel.  (*Id.*); *see Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("The rule that a corporation may litigate only through a duly licensed attorney is venerable and widespread."). After no notice of appearance had been filed by March 2, 2020, Judge Haight extended the deadline to March 13, 2020, and held that in the event that "Defendants fail to retain successor counsel or

produce an employee list on or before March 13, 2020, the Court will note Defendants' default and failure to comply with the January 2, 2020 and January 29, 2020 Orders and permit Plaintiffs to file a motion for a default judgment or seeking to hold Defendants in contempt, or for any other relief to which Plaintiffs deem they are entitled." (ECF No. 64, at 1-2.)

That deadline passed with no filings by the Defendants. On April 7, 2020, the Plaintiffs moved for an order striking the Defendants' answer as a sanction pursuant to Rule 37 of the Federal Rules of Civil Procedure and entering the default of the Defendants pursuant to Rule 55(a). (ECF Nos. 65-67.) On April 21, 2020, Attorney LeVasseur again moved to withdraw, representing that she had provided the Defendants with notice of her intent to withdraw and served them with a copy of both of Judge Haight's prior rulings (ECF Nos. 63-64) ordering them to retain successor counsel. (ECF No. 69.) The Plaintiffs also moved for a prejudgment remedy. (ECF No. 71.)

On March 31, 2022, Judge Haight issued an omnibus ruling that addressed all then-pending motions. (ECF No. 80.) He granted Attorney LeVasseur's motion to withdraw as counsel; granted the Plaintiffs' request to strike the Defendants' answer as a sanction; and granted the Plaintiffs' request to enter Defendants' default pursuant to Federal Rule of Civil Procedure 55(a). (*Id.* at 37-39.) Additionally, since the Plaintiffs had only accounted for damages allegedly due to Ms. Zhu and Ms. Yin in the motion for prejudgment remedy and the Plaintiffs had only moved for default judgment on behalf of Ms. Zhu and Ms. Yin, Judge Haight inferred that the Plaintiffs no longer sought to vindicate the rights of a proposed class. (*Id.* at 44-45.) He thus denied the Plaintiffs' Motion for Class Certification as moot and granted the Plaintiffs leave to amend the complaint to include the claims of Ms. Yin, so that the case could proceed to a calculation of damages owed to Ms. Zhu and Ms. Yin. Accordingly, he directed the Clerk to enter the default of all Defendants and ordered the Plaintiffs to file and serve an amended complaint on or before May 1, 2022. (*Id.*

at 45-46.)   Finally, he ruled that if the Defendants failed to respond to Plaintiffs' Amended Complaint within twenty-one days after service, the Plaintiffs could move for default judgment by June 1, 2022, which was later amended to July 1, 2022.  (ECF Nos. 80, 85, 87.)

The Plaintiffs then filed an Amended Complaint on April 20, 2022, and proof of service for all Defendants by June 28, 2022.  (ECF Nos. 82, 84, 88, 91, 92.)  Finally, on July 22, 2022, the Plaintiffs filed a motion for default judgment with an accompanying memorandum of law seeking damages and attorney's fees.  (ECF Nos. 95, 97.)  Plaintiffs also filed affidavits setting forth the hours that they worked and other wage details, damages calculations prepared by their attorneys, an attorney's fees invoice, and text of a proposed order.  (ECF No. 96.)  On April 6, 2023, Judge Haight referred the motion for default judgment to me, United States Magistrate Judge Thomas O. Farrish.

In their motion and accompanying submissions. Ms Zhu and Ms. Yin explained how they calculated their damages.  I will begin with Ms. Zhu.  She begins by stating that, from November 11, 2012, to February 29, 2016, she worked as a packer at Matsu and "was paid a flat compensation of two thousand dollars ($2,000.00) per month."  (ECF No. 96-1, at ¶¶ 9, 17.)  On average she worked 72.75 hours per week.  (*Id.* ¶ 14.)  She then translated her monthly rate into a "regular rate" for minimum wage and overtime purposes.  Instead of treating her monthly pay as if it was intended to compensate the 72.75 hours that she worked each week, she calculated her regular rate as if the pay was intended to compensate only a forty-hour week, evidently in reliance on the "rebuttable presumption that" a weekly or monthly salary "covers 40 hours" of work per week.  *Estanislau v. Manchester Developers, LLC*, 316 F. Supp. 2d 104, 108 (D. Conn. 2004); *see also* discussion, Section III.B.2 *infra*.  This choice had the effect of dropping her minimum wage claim to zero, because dividing her monthly compensation in this way resulted in regular rates that exceeded

7

both the federal and state minimum wages in each week she was employed.  (*See* ECF No. 96-3.)

But it resulted in unpaid overtime claims totaling $31,418.41, as depicted in this chart:[1]

| A Work Period | B Total Hours Per Week | C Monthly Pay | D Weekly Pay[2] | E Regular Rate (D/40) | F Overtime Rate (E x 1.5) | G Overtime Hours | H No. of Weeks in Period | I Total Overtime Claim (F x G x H) |
|---|---|---|---|---|---|---|---|---|
| 2/07/2015 – 12/31/2015 | 72.75 | $2,000 | $461.54 | $11.54/hr. | $17.31/hr. | 32.75 | 46.86 | $26,559.89 |
| 1/01/2016 – 02/06/2016 | 72.75 | $2,000 | $461.54 | $11.54/hr. | $17.31/hr. | 32.75 | 5.29 | $2,996.09 |
| 2/07/2017 – 2/29/2016 | 72.75 | $2,000 | $461.54 | $11.54/hr. | $17.31/hr. | 32.75 | 3.29 | $1,862.43[3] |
| | | | | | | | Total: | $31,418.41 |

Ms. Zhu also says that she is entitled to liquidated damages under the FLSA in the amount

of $31,418.41.[4]  (ECF No. 96-3.)  Additionally, she requests an award of "prejudgment interest in

the amount of $1,505.29" (ECF No. 96-1, ¶ 31), which she calculates using a ten percent rate, the

maximum allowable under Conn. Gen. Stat. § 37-3a.  (ECF No. 96-3.)  All told, she seeks to

recover $64,342.11 – overtime wages of $31,418.41, plus liquidated damages of $31,418.41, plus

$1,505.29 in interest.  (*Id.*)

---

[1]    As discussed further in section III.B.2 *infra*, although Ms. Zhu began working for the Defendants in 2012, she seeks to recover FLSA damages only from February 2015 onward due to the statute of limitations.

[2]    Monthly pay times twelve months, divided by fifty-two weeks.  *See* 29 C.F.R. § 778.113 ("A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks).").

[3]    I would have calculated slightly different totals under Ms. Zhu's method.  (*See* ECF No. 96-3, at 1.)  Specifically, I would have calculated $26,561.51 for the first period, $2,998.51 for the second, and $1,864.86 for the third.  But because the purpose of this discussion is to show her method, not mine, I have included her requested values in this chart.  In Section III *infra*, I will recommend a different method.

[4]    While Ms. Zhu argues in her Memorandum of Law in Support of Plaintiff's Motion for Default judgment and Fees that she should also be awarded liquidated damages under the CMWA, (ECF No. 97, at 15), she does not include them in the total on the spreadsheet calculating her damages or in the proposed judgment.  (ECF No. 96-3, at 1; ECF N0. 96-5.)

Ms. Yin's calculation differs because she worked part-time for a portion of the relevant period. She states that she worked full-time as a waitress at Matsu from July 1, 2014, to on or around November 30, 2015, and was paid $180 bi-weekly, not including tips at the end of each shift. (ECF No. 96-2, ¶¶ 9, 13.) From December 1, 2015, to about May 30, 2016, she worked part time as a waitress and was paid $15 per day, not including tips at the end of her shift. (*Id.* ¶¶ 12, 14.) While she was full-time, she worked an average of 54.75 hours per week and while she was part-time, she worked an average of nineteen hours per week over the course of two days. (*Id.* ¶¶ 10, 12.) For her periods of full-time work, her attorneys used the same technique of treating her standard weekly pay as if it was intended to compensate only forty hours, not 54.75. (*See* ECF No. 96-3) (dividing weekly pay of $83.08 by forty to reach "calculated hourly rate" of $2.08). But unlike with Ms. Zhu, even using this technique, the regular rate is so low as to create a minimum wage shortfall in addition to an overtime shortfall. (*See* ECF No. 96-3, at 2.) As for her part-time work, Ms. Yin incorrectly calculated that she had no minimum wage or overtime shortfall per week. Her unpaid wage claims (according to her method) can be depicted in the following charts:

Full-time work, minimum wage damages:

| **A** Work Period | **B** Total Hours Per Week | **C** Monthly Pay | **D** Weekly Pay | **E** Regular Rate (D/40) | **H** No. of Weeks in Period | **I** Total Min. Wage Claim (($7.25 – E) x 40) x 46.86 |
|---|---|---|---|---|---|---|
| 7/27/2015 – 11/30/2015 | 54.75 | $360 | $83.08 | $2.08 | 18.14 | $3,751.35 |

Full-time work, overtime damages:

| **A** Work Period | **B** Total Hours Per Week | **C** Monthly Pay | **D** Weekly Pay | **F** Overtime Rate ($7.25 x 1.5)[5] | **G** Overtime Hours | **H** No. of Weeks in Period | **I** Total Overtime Claim (F x G x H) |
|---|---|---|---|---|---|---|---|
| 7/27/2015 – 11/30/2015 | 54.75 | $360 | $83.08 | $10.88/hr. | 14.75 | 18.14 | $2,909.77 |

In addition, Ms. Yin requests $261.25 a week in "tip retention." Adding the weekly tip retention to the above values results in a total damages request of $11,404.22 for the period of time that she worked full-time.

As for her part-time work, Ms. Yin's attorney appears to have accidentally put "$15.00" in the Calculated Hourly Rate column of the spreadsheet he submitted. (See ECF No. 96-3, at 2.) It is clear from her affidavit, however, that she was paid $15 a day, not $15 an hour. (ECF No. 96-2, ¶ 14.) This error had the result of producing no minimum wage damages for this period. Thus, for her part-time work, Ms. Yin erroneously requested only $261.25 a week in tip retention, and no minimum wage damages, for a total of $6,792.50. She also seeks $18,196.72 in liquidated damages under the FLSA. (*Id.*) In sum, Ms. Yin seeks $18,196.72 in unpaid wages and tip retention, and $18,196.72 in liquidated damages, for a total of $36,393.45.

The Plaintiffs also request awards of attorneys' fees and costs. They seek $64,108.33 in fees for work done by lawyers and staff at their law firm, Troy Law - $49,291.00 for work done by managing attorney John Troy (89.62 hours times $550/hour), $12,113.33.00 for work done by managing associate Aaron Schweitzer (30.28 hours times $400/hour), $1,814.00 for work done by associate Tiffany Troy (9.07 hours times $200/hour), and $890.00 for work done by managing

---

[5]     It is clear from Ms. Yin's chart calculating her damages that she has based her overtime wage on the federal minimum wage multiplied by 1.5. She is actually due the applicable state minimum wage multiplied by 1.5 for her overtime hours. *See* 29 C.F.R. § 778.5; *Fuk Lin Pau v. Jian Le Chen*, No. 3:14-cv-841 (JBA), 2015 WL 6386508, at *8 (D. Conn. Oct. 21, 2015) ("Unlike the minimum wage provisions of the FLSA, the regulations governing the overtime provisions of the Act expressly incorporate the state minimum wage."). In section III.B.3 I will apply this rate.

clerk Preethi Kilaru.  (ECF No. 96, at 26.)  Plaintiffs also seek $842.78 in legal fees for local

counsel, Attorney Gary Phelan from Mitchell & Sheahan.  (ECF No. 96-5.)  Finally, they seek an

award of $1,379.03 in costs, covering the $400.00 they paid to file the complaint; the $75.00 they

paid to move for Attorney Troy's *pro hac vice* admission; $18.43 in Federal Express charges; and

$885.60 in process server fees.  (*Id.*; ECF No. 96-4, at 6.)  Having carefully reviewed their motion,

memorandum, affidavits, and exhibits, I now make the following recommendations.

## III.  DISCUSSION

### A.  Governing Legal Standards

When a defendant defaults, its liability is ordinarily deemed resolved and the Court

proceeds to the question of damages.  "[A] party's default is deemed to constitute a concession of

all well pleaded allegations of liability[.]" *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,

973 F.2d 155, 158 (2d Cir. 1992).  "A default also effectively constitutes an admission that

damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a

complaint violated the laws upon which a claim is based and caused injuries as alleged." *Santillan*

*v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011) (citing *Greyhound Exhibitgroup*, 973 F.2d at

159).  A default is not, however, "considered an admission" of the amount of the plaintiff's

damages.  *Greyhound Exhibitgroup*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707

(2d Cir. 1974) and Fed. R. Civ. P. 8(d)).  Instead, damages are calculated in subsequent

proceedings.  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro. Found.*

*Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

District courts have discretion in choosing a procedure for quantifying the damages,

provided that the chosen procedure is sufficient to ensure that the award has an evidentiary basis,

and further provided that the defendant is given a chance to oppose the plaintiff's claims.

"Generally, 'damages, which are neither susceptible of mathematical computation nor liquidated

as of the default, usually must be established by the plaintiff in an evidentiary proceeding.'" *Andrade v. Kwon*, No. 3:08-cv-479 (SRU), 2012 WL 3059616, at *3 (D. Conn. Mar. 26, 2012) (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158).  "A court may forgo an evidentiary hearing," however, if it otherwise "'ensures that there is a basis for the damages specified.'"  *Id.*  (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)) (brackets omitted).  It may, for example, "rel[y] upon detailed affidavits and documentary evidence" when the damages are "capable of mathematical calculation."  *See Fustok*, 873 F.2d at 40.  In any event, "[t]he court has the discretion to require an evidentiary hearing or to rely on detailed affidavits or documentary evidence in making this determination."  *Santillan,* 822 F. Supp. 2d. at 290.

### B.    The Plaintiffs' Claims Against the Defendants

The Plaintiffs contend that they are entitled to a default judgment awarding them unpaid wages, liquidated damages, and attorneys' fees under either the FLSA or the CMWA.  (*See* ECF No. 97, at 5.)  Because the two statutes treat some issues differently (*see* discussion, Section III.B.2 *infra*), I will begin by considering whether the Plaintiffs may recover under the FLSA on the current record.  (*See* discussion, Section III.B.1 *infra*.)  I will then determine the relevant damages period considering the applicable statute of limitation.  (*See* discussion, Section III.B.2 *infra.*) After concluding that the Plaintiffs can recover under the FLSA for damages incurred in the three years before they consented to join the case, I will calculate their recoverable wage-and-hour losses (Section III.B.3); discuss their claim for liquidated damages (Section III.B.4); and address their claim for pre-judgment interest.  (Section III.B.5.)  I will then address their claim for attorneys' fees and costs (Sections III.B.6-7), and finally, I will consider whether judgment should enter against all or fewer than all Defendants.

### 1.    *Applicability of the FLSA – interstate commerce*

To recover under the FLSA – but not under the CMWA – a plaintiff must show that her employment is sufficiently connected to interstate commerce.  "The FLSA's minimum wage and overtime provisions apply to an employee who is: (1) 'engaged in commerce or in the production of goods for commerce'; or (2) 'employed in an enterprise engaged in the production of goods for commerce."  *Morales v. Gourmet Heaven, Inc.*, No. 3:14-cv-01333 (VLB), 2016 WL 8254353, at *4 (D. Conn. Nov. 29, 2016) (quoting 29 U.S.C. § 207(a)(1)).  "The two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively."  *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009).  A business is subject to "enterprise" coverage under the FLSA when it "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees *handling, selling or otherwise working on* goods or materials that have been *moved in or produced for commerce* by any person'; and (ii) has 'annual gross volume of sales made or business done . . . not less than $500,000.'"  *Morales*, 2016 WL 8254353, at *4 (quoting 29 U.S.C. § 203(s)(1)(A)) (emphasis in original).  "A plaintiff bears the burden of proving either individual or enterprise coverage."  *Id.* (citing *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 343-44 (E.D.N.Y. 2014)).

In this case, the record is sparse with respect to the interstate commerce element.  The Plaintiffs' Amended Complaint alleges only that the entity Defendants were "engaged in interstate commerce" with "gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year" and "purchased and handled goods moved in interstate commerce," without any additional supporting detail.  (ECF No. 82, at 4.)  The Defendants' answer denied these allegations – but Judge Haight has since stricken their answer as a sanction.  (ECF Nos. 13, 80.)  The Plaintiffs did not include any further allegations related to this element in the declarations that they filed in support of their default judgment.  (ECF Nos. 95-97.)

Courts have nonetheless held the FLSA to be applicable in default judgment cases with similar records. In *Acosta v. DRF Hospitality Management, LLC*, for example, the court held that the FLSA applied because the plaintiff had "allege[d] that at all relevant times," the defendant "had employees engaged in commerce or in the production of goods for commerce and had annual gross revenues of at least $500,000." No. 18-cv-346 (DRH) (AKT), 2019 WL 1590931, at *9 (E.D.N.Y. Mar. 13, 2019). In that court's view, the two allegations "sufficiently pleaded that [the defendant] is subject to the FLSA." *Id.*; *see also Jin Zhi Bi v. Qin Ju Xia*, No. 3:18-cv-23 (JAM), 2023 WL 4684828, at *6 (D. Conn. July 21, 2023) (concluding that the defaulted defendant qualified for enterprise coverage because the plaintiff's complaint alleged that it "generated over $500,000 in annual revenue . . . and handled goods moved in interstate commerce"). Similarly, in *Fermin v. Las Delicias Peruanas Restaurant, Inc.*, the court concluded that the FLSA applied even though the "Plaintiffs' Complaint restate[d] the statutory definition without providing any additional facts." 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). Treating the plaintiffs' gross revenue allegations as established by the defendant's default, the court "infer[red] that the myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from" one state. *Id.* "As a restaurant, it is reasonable to infer that Las Delicias requires a wide variety of materials to operate . . . . [and it] is also reasonable to infer that some of those materials moved or were produced in interstate commerce." *Id.*; *accord Newman v. West Bar & Lounge*, No. 20-cv-1141 (KAM) (RER), 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021); *Klimchak v. Cardrona*, No. 09-cv-4311, 2014 WL 3778964, at *5 (E.D.N.Y. July 31, 2014) ("[S]everal courts in this district have inferred FLSA enterprise coverage based on the nature of the defendant employer's business, notwithstanding similar pleading deficiencies."); *but see Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 85-86 (E.D.N.Y. 2012) (disapproving of

"inferring an interstate commerce nexus from nothing more than [a] general description of an employer's business"). Because the Plaintiffs in this case have alleged that the entity Defendants had more than $500,000 in gross revenues (Am. Compl., ECF No. 82, ¶¶ 12-18); and because they have also alleged that the Defendants "purchased and handled goods [that] moved in interstate commerce" (*id.*); and because other courts have inferred enterprise coverage in similar circumstances, I conclude that the FLSA applies here.

### 2.    *Statute of limitations*

The Plaintiffs' claims implicate the FLSA and CMWA statutes of limitation. Under the FLSA, actions to recover unpaid wages ordinarily "may be commenced" only "within two years after the cause of action accrued." 29 U.S.C. § 255(a); *see also* 29 C.F.R. § 790.21(b) ("[A] cause of action under the [FLSA] for unpaid minimum wages or unpaid overtime compensation 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."). And under the CMWA, "[n]o action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues." Conn. Gen. Stat. § 52-596. The FLSA, however, has a three-year statute of limitation for "willful" violations. 29 U.S.C. § 255(a).

Here, Ms. Zhu claims that her wages were wrongfully withheld beginning in November 2012 (*see* ECF No. 96-3, at 1) but she did not file her Consent to Become Party Plaintiff until February 7, 2018. (ECF No. 8); *D'Antuono v. C & G of Groton, Inc.*, No. 3:11-cv-33 (MRK), 2012 WL 1188197, at *2 (D. Conn. Apr. 9, 2012) (explaining that FLSA claims are commenced when consent to become party plaintiff is filed, even for the named plaintiff). She worked for the Defendants until February 29, 2016. (ECF No. 96-1, at 2.) Ms. Yin claims that her wages were wrongfully withheld beginning in July 2014 (*see* ECF No. 96-3, at 2) but she filed her Consent to Become Party Plaintiff on July 27, 2018. (ECF No. 32.) She also only worked for the Defendant

until May 30, 2016. (ECF No. 96-2, at 3.) Thus, Ms. Yin can only recover if the three-year statute

applies, since she has no unlawfully withheld wages within the two years preceding July 27, 2018.

Courts have considered whether wage-and-hour defendants waive statute of limitation

defenses by defaulting, and they have reached different conclusions. Generally, "[a] claim that a

statute of limitations bars a suit is an affirmative defense, and, as such, it is waived if not raised in

the answer to the complaint." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 967 F.2d 742,

752 (2d Cir. 1992); *accord Sec. & Exch. Comm'n v. Boock*, 750 F. App'x 61, 62 (2d Cir. 2019)

(summary order). Following this principle, at least one court has held that a defendant waives the

FLSA's statute of limitation when it fails to appear and plead the defense. *Gurung v. Malhotra*,

851 F. Supp. 2d 583, 592 (S.D.N.Y. 2012) ("[T]he defendants failed to appear, and thus did not

assert any defenses. Gurung therefore may recover on her FLSA claims, even if they might have

been untimely had the Malhotras asserted a timely statute of limitations defense.") Other courts

have, "upon motions for default judgment, where no affirmative defenses have been asserted . . .

limited plaintiffs' unpaid wage claims under the FLSA to the period of time set forth in [the]

FLSA's statute of limitations." *Vinas v. Pullini Subsurface Contractors, Inc.*, No. 11-CV-2765

(FB) (LB), 2012 WL 6641662, at *4 (E.D.N.Y. Oct. 5, 2012) (citing cases). Courts have also

limited a plaintiff's recovery to the statute of limitations in cases where the answer has been

stricken as a sanction. *See Gunawan*, 897 F. Supp. 2d at 87; *Pineda v. Masonry Const., Inc.*, 831

F. Supp. 2d 666, 682 (S.D.N.Y. 2011).

Here, the Plaintiffs argue that the three-year statute of limitations applicable to willful

FLSA violations should apply. (ECF No. 97, at 11-12.; ECF No. 96-3 (applying three-year SOL

in damages calculations).) In their Amended Complaint the Plaintiffs alleged that the Defendants

"willfully and intentionally committed widespread violations of the FLSA and CMWA by

16

engaging in a pattern and practice of failing to pay [their] employees" (Am. Compl., ¶ 2);
"knowingly and willfully disregarded the provisions of the FLSA as evidence by failing to
compensate Plaintiff and Collective Class Members for overtime at rates not less than one and
one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek,
when they knew or should have known that such was due and that failing to do so would financially
injure Plaintiff and Collective Action members" (*Id.* ¶ 72); "willfully failed to distribute records
of hours worked, earnings, and overtime to the restaurant workers" (*Id.* ¶ 76); and "willfully failed
to keep records of hours worked by the restaurant workers."  (*Id.* ¶ 77.)  Plaintiffs also broadly
alleged that the Defendants "committed the following alleged acts knowingly, intentionally and
willfully."  (*Id.* ¶¶ 26, 44, 57.)

Since the Plaintiffs themselves have applied a statute of limitations in their calculations, I
recommend that the Court limit their claims in accordance with the applicable statute of
limitations, as the court did in *Vinas*.  I further recommend that the court apply the three-year
statute of limitations applicable to willful violations of the FLSA.  While the Plaintiffs' willfulness
allegations are not as specific as in some other cases, defaulting defendants are generally deemed
to have admitted any such allegations.  *E.g., Rodriguez v. Eden Rose, Corp.*, No. 22-cv-500
(ENV)(JRC), 2023 WL 2969311, at *2 (E.D.N.Y. Mar. 3, 2023) (relying on minimal allegations
that defendants "willfully violated" the FLSA and defendants' default to apply three-year statute
of limitation); *Gao v. Jian Song Shi*, No. 18-cv-2708 (ARR) (LB), 2021 WL 1949275, at *9
(E.D.N.Y. Apr. 30, 2021), *report and recommendation adopted sub nom. Bin Gao v. ABC Corp.*,
No. 18-cv-2708 (ARR) (LB), 2021 WL 1946322 (E.D.N.Y. May 15, 2021) ("Here, plaintiff's
allegations that defendants acted 'knowingly and willfully' . . . and defendants' default both
demonstrate willfulness, allowing for a three-year statute of limitations.").

The limitations issue affects the statute under which the Plaintiffs can recover. It is well-established that a Plaintiff cannot recover under both the FLSA and the CMWA. *Fuk Lin Pau v. Jian Le Chen*, No. 3:14-cv-841 (JBA), 2015 WL 6386508, at *8 (D. Conn. Oct. 21, 2015); *Andrade*, 2012 WL 3059616, at *4 ("Plaintiffs can recover back pay under either the FLSA or the CMWA."). Courts therefore typically award damages under the statute that provides the greater recovery. *See Fuk Lin Pau*, 2015 WL 6386508, at *8. Since all of Ms. Yin's employment is outside of the two-year statute of limitations applicable to CMWA claims, she can only recover under the FLSA. As for Ms. Zhu, she only worked for approximately three weeks within the CMWA statute of limitations and approximately fifty-five weeks within the three-year statute of limitations applicable to willful FLSA violations. Because both Plaintiffs recover more under the FLSA than under the CMWA, I will calculate the proper damage amount for each Plaintiff under the former statute.

### 3.    *The Plaintiffs' claims for unpaid wages*

Subject to certain exceptions not relevant here, both the FLSA and the CMWA require employers to pay their employees a minimum wage. "Section 206 of the FLSA sets forth a minimum hourly wage employers must pay their employees who engage in work affecting interstate commerce." *Santillan*, 822 F. Supp. 2d at 291 (citing 29 U.S.C. § 206(a)(1)(C)). At all times relevant to this case, the federal minimum wage was $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). The CMWA likewise requires employers to pay a minimum wage, *see Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 263 n.2 (D. Conn. 2002) (observing that the CMWA "provides wage . . . guarantees similar to the FLSA"), but Connecticut's minimum is higher than the federal minimum. The state minimum wage was $9.15 per hour in 2015, rising to $9.60 per hour effective

January 1, 2016. Conn. Dep't of Labor, *History of Minimum Wage Rates*, https://www.ctdol.state.ct.us/wgwkstnd/wage-hour/history.htm (last visited July 18, 2023).[6]

Both statutes also require employers to pay time and a half for overtime. Section 207 of the FLSA "specifies that an employer must pay employees who work in excess of forty hours during a workweek for the excess hours 'at a rate not less than one and one-half times the regular rate at which he is employed.'" *Santillan*, 822 F. Supp. 2d at 291 (quoting 29 U.S.C. § 207(a)(1)). In the context of overtime, however, the "regular rate" under the FLSA is based on the applicable state minimum wage. *See* 29 C.F.R. § 778.5. In other words, under the FLSA an employee must be paid $7.25 for every hour up to forty, and 1.5 times the applicable state minimum wage for every hour over forty. *Fuk Lin Pau v. Jian Le Chen*, 2015 WL 6386508, at *8 ("Unlike the minimum wage provisions of the FLSA, the regulations governing the overtime provisions of the Act expressly incorporate the state minimum wage.").

The CMWA's overtime provision is similar. *See* Conn. Gen. Stat. § 31-76c ("No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."); *Morales*, 2016 WL 8254353, at *5 ("Like the FLSA, the [CMWA] overtime provision requires that employers pay employees one and one-half times the . . . regular rate for any hours over forty hours per week."). Under both statutes, "an employer must pay the employee one and one-half times his regular wage for every hour worked in excess of forty, not just one and one-half times the minimum wage." *Morales v. Cancun Charlie's Rest.*, No. 3:07-cv-1836 (CFD), 2010 WL 7865081, at *7 (D. Conn. Nov. 23, 2010).

---

[6]    Archived hyperlink available at https://perma.cc/8AHR-RGMT.

Plaintiffs bear the burden of proving that they were not paid in accordance with the statute, but in meeting this burden, the law makes allowances for the practical realities of the employment relationship.  While the plaintiff must show "that [she] performed work for which he was not properly compensated," "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251 *et seq.*  "Due regard must be given to the fact that it is the employer who has the duty under . . . the Act to keep proper records of wages [and] hours," and courts should likewise note that "employees seldom keep . . . [records of hours worked] themselves," and "even if they do, the records may be and frequently are untrustworthy."  *Id.* "Therefore, the easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secure the production of such records' from the employer, who has the duty for their maintenance under" the statute.  *Santillan*, 822 F. Supp. 2d at 294 (quoting *Anderson*, 328 U.S. at 687) (brackets omitted).  When the defendant fails to produce the records in discovery, thereby frustrating this "easiest" of methods, courts often permit plaintiffs to meet their burden "by relying on recollection alone."  *Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 2d 211, 224 (D. Conn. 2013) ("An employee's burden to produce 'sufficient evidence' is low and can be met by that employee's 'recollection alone.'"); *see also Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 336 (S.D.N.Y. 2005).  And "[i]n the absence of rebuttal by the defendants, or where the employer has defaulted . . . the employees' recollection and estimate of hours worked are presumed to be correct."  *Jemine v. Davis*, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012) (citations omitted).

Under the overtime provisions of the two statutes, determining whether the Plaintiffs were "properly compensated" requires calculation of their "regular rate" of pay.  *See* 29 U.S.C. §

207(a)(1); Conn. Gen. Stat. § 31-76c; *Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 178 (D. Conn. 2020) ("In order to calculate any overtime wages owed, [the Court] must first determine the 'regular rate' received by plaintiffs.").  "Where an employee earns a fixed salary, 'the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate.'" *Ge Chun Wen v. Hair Party 24 Hours Inc.*, No. 15-cv-10186 (ER) (DF), 2021 WL 3375615, at *10 (S.D.N.Y. May 17, 2021) (quoting 29 C.F.R. § 778.113(a)).  When the employee is paid monthly, her regular rate is nevertheless expressed in hourly terms by multiplying her monthly salary by the twelve months of the year to reach an annual figure; dividing that figure by fifty-two to reach a weekly sum; and then dividing the weekly amount by the relevant number of hours in each week.  *See* 29 C.F.R. § 778.113; *Gao*, 2021 WL 1949275, at *11 (determining regular hourly rate of a restaurant employee paid a monthly salary); *see also Kinkead*, 450 F. Supp. 3d at 182 (observing that the "regular rate . . . is calculated under the CMWA the same as it is under the FLSA").

In determining "the number of hours which [a] salary is intended to compensate," courts often presume a figure of forty hours per week.  *Estanislau*, 316 F. Supp. 2d at 108; *Giles v. City of N.Y.*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999).  The presumption may be rebutted "with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Jiao v. Shi Ya Chen*, No. 03-cv-0165 (DF), 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007) (citing *Giles*, 41 F. Supp. 2d at 317). When a defendant defaults – and, therefore, presents no evidence of such an agreement – some courts have applied the presumption without much additional discussion, and have gone on to calculate the plaintiff's regular rate simply by dividing his weekly salary by forty.  *E.g., Newman*, 2021 WL 2401176, at *10 ("Defendants failed to rebut the 40-hour weekly presumption by their

default."); *De la Cruz v. Trejo Liquors, Inc.*, No. 16-cv-4382 (VSB) (DF), 2019 WL 9573763, at *5 (S.D.N.Y. Sept. 10, 2019) (observing, in the context of a default judgment, that "[a]bsent evidence that the employer and employee understood that the fixed weekly salary included overtime hours, a court will find that the weekly salary covered only the first 40 hours"); *Rosendo v. Everbrighten, Inc.*, No. 13-cv-7256 (JGK) (FM), 2015 WL 1600057, at *3 (S.D.N.Y. Apr. 7, 2015) ("[W]hen an employer has defaulted and offers no rebuttal, the Court calculates the employee's regular hourly rate by dividing his weekly salary by forty hours."); *see also Gao*, 2021 WL 1949275, at *12 ("In cases of default, this presumption is unlikely to be rebutted.").

Other courts have declined to apply the presumption when the plaintiff worked the same number of hours each week. In determining damages "[i]n the absence of any written instrument memorializing the parties' intentions," the court's task is to "infer the terms of their agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record." *Moon v. Kwon*, 248 F. Supp. 2d 201, 206 (S.D.N.Y. 2002). And where the plaintiff worked the same schedule every week, courts have inferred an agreement that the weekly compensation would cover all those hours. In *Chopen v. Olive Vine, Inc.*, for example, the court computed the plaintiff's regular rate based on a seventy-two-hour workweek – not a forty-hour week – because "throughout his employment, plaintiff worked the same number of hours each week." No. 12-cv-2269 (NGG) (MDG), 2015 WL 1514390, at *6 (E.D.N.Y. Mar. 13, 2015). Similarly, in *Man Wei Shiu v. New Peking Taste, Inc.*, the court divided the plaintiff's weekly pay of $270 not by forty, but rather by sixty-seven, because he "testified that, at the time of the hearing," he understood that his "regular schedule consisted of a 67-hour workweek." No. 11-cv-1175 (NGG) (RLM), 2014 WL 652355, at *12 n.14 (E.D.N.Y. Feb. 19, 2014). Although the defendant had defaulted, the court rejected the argument that the plaintiff's regular rate should be

calculated by dividing his weekly salary by forty, because 29 C.F.R. § 779.113 instructs that the relevant figure is "the number of hours which the salary *is intended to compensate.*" *Id.* (emphasis in original).

In *Fuk Lin Pau v. Jian Le Chen*, the court used the plaintiff's actual hours worked – rather than a default figure of forty hours – as the denominator in the "regular rate" calculation. 2015 WL 6386508, at *6-7. In that case, the plaintiff received a $2,200 monthly salary and worked 80.5 hours per week. *Id.* at *5-7. There was no mention of any explicit agreement that the salary would cover all 80.5 hours, but there was evidence that the plaintiff worked substantially the same number of hours each week. *Id.* at *4-5. The court began its regular rate calculation by translating the plaintiff's $2,200 monthly salary into a weekly wage of $507.69. *Id.* at *7. It then divided that weekly wage by "the number of hours which the salary is intended to compensate" – which, it concluded, was 80.5 rather than forty hours. *Id.* at *7 (quoting 29 C.F.R. § 778.113). This yielded a regular rate of $6.31 per hour, which was below the then-applicable state and federal minimum wages. *Id.* at *7. The court then calculated damages based on the minimum wage for each of the first forty hours each week, and 1.5 times the minimum wage for each of the 40.5 overtime hours, rather than according to the method that would have followed from a forty-hour presumption. *Id.* at *9.

The court likewise declined to apply the forty-hour presumption in *Wei v. Sichuan Pepper, Inc.*, No. 3:19-cv-00525 (JBA), 2022 WL 385226, at *9 (D. Conn. Jan. 17, 2022), *report and recommendation adopted sub nom. Wei v. Sichuan Pepper*, No. 3:19-cv-525 (JBA), 2022 WL 382019 (D. Conn. Feb. 7, 2022). In that case, the named Plaintiff, Mr. Wei, originally received a monthly salary of $2,700 and worked exactly 66.16 hours per week. *Id.* at *4. His counsel, also John Troy and Aaron Schweitzer, calculated his regular rate using a forty-hour workweek, which

resulted in a regular rate of $15.58 and an overtime rate of $23.37. *Id.* This produced no minimum wage shortfall but a large overtime shortfall. *Id.* Yet because he always worked a 66.16-hour week, I recommended that Judge Arterton recalculate the hourly rate using "the number of hours which the salary is intended to compensate" – 66.16 instead of forty. *Id.* at *9-10. This resulted in a regular rate of $7.94 per hour, instead of $15.58, which was below the Connecticut minimum wage. *Id.* at *10-11.

In this case, the amounts that the Plaintiffs seek are similarly based on a regular rate calculation that, in turn, is based on the presumption that their monthly salaries were intended to compensate only the first forty hours of each week. Ms. Zhu calculated her regular rate at $11.54, which is the figure that results if one multiplies her monthly pay of $2,000 by twelve, then divides by fifty-two, and then divides again by forty rather than by the 72.75 hours that she worked each week. (ECF No. 96-3, at 1.) Ms. Yin performed a similar calculation for the period in which she worked full-time to reach a regular rate of $2.08. (*Id.* at 2.) In Ms. Zhu's case, using a forty-hour workweek to calculate the regular rate had the effect of dropping her minimum wage claim to zero, since the result of that calculation, $11.54, exceeded both the state and federal minimum wages at all relevant times. (*See id.*) But she calculated her overtime claims by multiplying the number of hours worked each week in excess of forty – 32.75 – by an overtime rate of 1.5 times her claimed regular rate of $11.54. The result is an overtime claim of $31,418.41, but no minimum wage claim, for Ms. Zhu. (*Id.*) In Ms. Yin's case, this method of calculation does not drop her minimum wage claim to zero, because her regular rate was still below the minimum wage even if one divides by forty rather than 54.75 during her periods of full-time employment. Yet even in her case, the Plaintiffs' use of the *Estanislau* presumption results in larger overtime claims and smaller minimum wage claims than would otherwise be the case.

I do not recommend using the forty-hour presumption in this case. Instead, I recommend that each Plaintiff's regular rate be calculated as if their monthly salary was in contemplation of all hours worked – 72.75 hours per week for Ms. Zhu and 54.75 hours per week in the case of Ms. Yin's periods of full-time employment. Like the plaintiff in *Chopen*, these Plaintiffs "worked the same number of hours each week," and "[u]nder these circumstances, it is reasonable to infer that the parties intended for plaintiff's weekly salary to include straight time pay for each hour worked." *Chopen*, 2015 WL 1514390, at *6. And like the plaintiff in *Man Wei Shiu*, these Plaintiffs seem to have understood that their "regular schedule consisted of" a workweek exceeding forty hours. 2014 WL 652355, at *12 n.14. Ms. Zhu says that she began working a 72.75-hour workweek immediately upon being hired, and that she worked the same number of hours every week that she was employed. (ECF No. 96-1, ¶¶ 9-16.) Ms. Yin says the same for the period that she worked full-time. (ECF Nos. 96-2, ¶¶ 9-11.)

This is not the first time that Plaintiffs' counsel has pled a minimum wage violation, only to change the method of calculation upon the defendant's default. In *Ge Chun Wen*, a plaintiff represented by the same counsel initially pled violations of the minimum wage laws as well as the overtime laws. 2021 WL 3375615, at *1. Once the defendant defaulted, however, he "abandon[ed]" that claim and "took the position that his base hourly rate of pay should be calculated based on an assumption that his flat weekly pay was intended to cover only the first 40 hours that he worked in a given week." *Id.* at *5. His new position had the effect of dropping his minimum wage claim to zero but adding tens of thousands of dollars to his overtime claims. *See id.* The court noted the inconsistency and requested clarification, and in response the plaintiff submitted a supplemental affidavit stating under penalty of perjury that he "did not understand [his] salary to be compensating [him] for any hours in excess of forty (40) each week." (Aff. of

Ge Chun Wen, ECF No. 68-1, ¶ 15, *Ge Chun Wen v. Hair Party 24 Hrs. Inc.*, No. 15-cv-10186-ER-DCF (S.D.N.Y. Feb. 11, 2021).)  With this statement in the record, and with no opposition from the defaulting defendants, the court calculated damages based on a "presum[ption] that Plaintiff's weekly salary covered only the first 40 hours of his work."  *Ge Chun Wen*, 2021 WL 3375615, at *16 (citing, *inter alia*, *Amaya v. Superior Tile & Granite Corp.*, No. 10-cv-4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012)).

In *Wei v. Sichuan Pepper*, plaintiffs represented by the same counsel likewise originally pled a minimum wage violation in their complaint, only to change their method of calculation after a default.  2022 WL 385226, at *3-4.  Unlike in *Ge Chun Wen*, however, they did not come forward with an affidavit from their clients, stating that the clients understood their salaries to contemplate only the first forty hours of each week's work.  *Id.* at *10 (contrasting case with *Ge Chun Wen* and noting that "[s]uch a statement is conspicuously absent from this case").  Without that statement, I recommended that Judge Arterton not apply the *Estanislau* presumption.  *Id.*

In this case, as in *Wei,* evidence that the parties intended the salaries to cover only the first forty hours is conspicuously absent.  The Plaintiffs say that they were "not informed of [their] hourly rate;" "not paid any overtime for all the overtime hours [they] worked with defendants;" and were "not compensated at least at one-and-one-half [their] promised hourly wage" for overtime[7] (ECF Nos. 96-2, ¶¶ 18-19, 28 (Zhu); ECF Nos. 96-2, ¶¶ 16-17, 25 (Yin)), but they do not say that they understood their monthly salaries to be compensating them only for the first forty hours each week.  And this omission takes on added significance when one considers that their counsel had the above exchange with the *Ge Chun Wen* court, and that I pointed out this very same

---

[7]     The third of these statements is, of course, inconsistent with the first.  On the one hand, the Plaintiffs say that they were not informed of their hourly rate, but on the other hand, they say they were not paid 1.5 times their "promised hourly wage" for overtime.

inconsistency in the *Wei* recommended ruling only six months before counsel submitted their affidavits in this case.  *See Wei*, 2022 WL 385226, at *10.

Of course, it is ordinarily a defendant's job to show an "explicit agreement" to include overtime in a flat salary, not the plaintiff's job to negate one.  *See, e.g., Amaya*, 2012 WL 130425, at *9.  As noted above, however, the court's task is to "infer the terms of [the parties'] agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record," *Moon*, 248 F. Supp. 2d at 206, and it may not "just accept plaintiff's statement of the damages."  *Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 32 (2d Cir. 2014) (summary order) (quoting *Transatl. Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)) (brackets omitted).  In this case, the Plaintiffs twice asserted they were due unpaid minimum wages.  (Compl., ECF No. 1, ¶¶ 52-59; Am. Compl., ECF No. 82, at 18.)  Each Plaintiff accepted a flat salary and then immediately began working a schedule of more than forty hours per week, a schedule that did not change at any point over the course of her employment.  Considering all the attendant circumstances, I would not apply the *Estanislau* presumption, but would instead infer that the Plaintiffs' fixed salaries were intended to compensate all hours worked.

### a.    Tip Credit and Tip Retention

Because Ms. Yin was a tipped employee, I must also consider whether the tip credit provision of the FLSA applies.  An employer can pay an employee less than the otherwise-applicable minimum wage if the employer shows that it is entitled to the benefit of that provision.  "An employee who is paid partially through tips may be paid at a rate less than the minimum wage—that is, at a rate equal to the minimum wage minus the 'tip credit'—so long as the employer '(1) inform[s] the employee of the 'tip credit' provision of the FLSA, and (2) permit[s] the employee to retain all of the tips the employee receives.'"  *Gunawan*, 897 F. Supp. 2d at 84.  These two

prerequisites are "strictly construed" and must be satisfied even if the employee received tips equivalent to the minimum wage. *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011). Additionally, courts have noted that the notice requirement "is a firm one." *Id.*

In this case, the Defendants are not entitled to the benefit of the tip credit because the Amended Complaint asserts that they "failed to furnish Yin with a notice, verbal, or written, of their intent to claim a tip credit against the minimum wage." (ECF No. 82, at 9.) Accepting all well-pled allegations as true, this is sufficient to conclude that the Defendants are not entitled to a tip credit. *See Chen v. Shanghai Cafe Deluxe, Inc.*, No. 16-cv-4790 (VF), 2023 WL 2401376, at *6 (S.D.N.Y. Mar. 8, 2023) (holding in a default judgment case that tip credit did not apply where plaintiff alleged defendants never informed her of their intent to claim a tip credit); *Suriel v. Cruz*, No. 20-cv-8442 (VSB/SLC), 2022 WL 1750232, at *13 (S.D.N.Y. Jan. 10, 2022), *report and recommendation adopted*, No. 20-cv-8442 (VSB), 2022 WL 1751163 (S.D.N.Y. May 31, 2022) ("Because the Defaulting Defendants failed to meet the notice requirements in the FLSA . . . , they were not entitled to any tip credit against the minimum wage."). Additionally, the employer bears the burden of proving that notice was given – and this employer has defaulted. *See Inclan v. New York Hosp. Grp.*, Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015). Ms. Yin is thus entitled to recover unpaid minimum wages and overtime, without any reduction for the tip credit.

Counsel's damages calculation asserts that Ms. Yin is owed $261.25 per week in "tip retention." (*See* ECF No. 96-3, at 2.) This is just a statement of counsel, however, and it is entirely unsupported by any admissible evidence. In particular, Ms. Yin did not include any assertion in her supporting affidavit that the Defendants kept her tips. (*See generally* ECF No. 96-2.) Moreover, her counsel has provided absolutely no explanation of how they arrived at this figure,

nor any legal justification why she is entitled to a tip retention figure in her memorandum in support of the motion for default judgment. (*See* ECF Nos. 95-97.) "[D]amages must have an evidentiary basis such that they can be 'ascertained with reasonable certainty.'" *LG Cap. Funding, LLC v. Worthington Energy, Inc.*, No. 16-cv-6288 (NGG) (ST), 2018 WL 1370266, at *4 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted*, No. 16-cv-6288 (NGG) (ST), 2018 WL 1368025 (E.D.N.Y. Mar. 16, 2018) (*quoting Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)). Furthermore, the law is clear there is no repayment of retained tips under the FLSA. "[Plaintiff] cannot hold Defendants liable under the FLSA for repayment of tips they illegally retained; that claim is available only under [state law]." *Chen*, 2023 WL 2401376, at *9; *Shum v. Jili Inc.*, No. 17-cv-7600 (RPK/VMS), 2023 WL 2974902, at *9 (E.D.N.Y. Mar. 19, 2023) ("[T]here is no claim available under the FLSA to recover unlawfully retained tips."); *Azeez v. Ramaiah*, No. 14-cv-5623 (PAE), 2015 WL 1637871, at *6 (S.D.N.Y. Apr. 9, 2015) ("There is no federal cause of action for unlawful retention of tips."). For these reasons, I have not included any damages for "tip retention" in the following calculations.

### b.    Application to Ms. Zhu

Calculating Ms. Zhu's unpaid wages as if her monthly salary contemplated all hours worked – rather than only the first forty hours of each week – results in the following figures. I begin by translating her monthly salary into its weekly equivalent:

$$(\$2,000 \times 12)/52 = \$461.54/\text{week}$$

I then divide that weekly salary by the total number of hours worked each week – not by forty – to arrive at her regular rate:

$$\$461.54/72.75 = \$6.34/\text{hour}$$

29

A regular rate of $6.34 per hour results in a minimum wage shortfall of $0.91.  As for overtime shortfall, the FLSA borrows its overtime rate from the applicable state minimum wage. *See* 29 C.F.R. § 778.5; *Fuk Lin Pau*, 2015 WL 6386508, at *8 ("Unlike the minimum wage provisions of the FLSA, the regulations governing the overtime provisions of the Act expressly incorporate the state minimum wage.").  This results in an overtime shortfall of $7.38 per hour for February 7, 2015, to December 31, 2015, and, once the Connecticut minimum waged increased from $9.15 to $9.60, $8.06 per hour for January 1, 2016, through her last date of employment.  Ms. Zhu is therefore entitled to under the FLSA to unpaid minimum wages of $0.91 per hour (that is, $7.25 minus $6.34) for each of the forty straight time hours per week, and either $7.38 or $8.06 depending on the pay period [($9.15 or $9.60 x 1.5) - $6.34)] for each of her 32.75 weekly overtime hours.  The resulting calculations are as follows:

| **A** Work Period | **B** Total Hours Per Week | **C** Monthly Pay | **D** Weekly Pay | **E** Regular Rate | **F** Straight Time Shortfall Per Hr. ($7.25 – E) | **G** Overtime Shortfall Per Hr. (CT Min. wage x 1.5 – E) | **H** No. of Weeks in Period | **I** Total Wage Shortfall: ((F x 40) + (G x (B – 40)) x H |
|---|---|---|---|---|---|---|---|---|
| 2/7/2015 – 12/31/2015 | 72.75 | $2,000 | $461.54 | $6.34/hr. | $0.91/hr. | $7.38/hr. | 46.71 | $12,984.48 |
| 1/1/2016 – 2/7/2016 | 72.75 | $2,000 | $461.54 | $6.34/hr. | $0.91/hr. | $8.06/hr. | 5.14 | $1,543.17 |
| 2/7/2016 – 2/29/2016 | 72.75 | $2,000 | $461.54 | $6.34/hr. | $0.91/hr. | $8.06/hr. | 3.14 | $943.05 |
| | | | | | | | Total: | **$15,470.70** |

I therefore recommend that the judgment that enters in Ms. Zhu's favor include unpaid wages under the FLSA in the amount of **$15,470.70**.

### c.    **Application to Ms. Yin**

I will first calculate the damages for Ms. Yin's full-time work in the same manner that I calculated Ms. Zhu's damages.  I begin by translating her monthly salary into its weekly equivalent:

$$(\$360 \times 12)/52 = \$83.08/\text{week}$$

I then divide that weekly salary by the total number of hours worked each week – not by forty – to arrive at her regular rate:

$$\$83.08/54.75 = \$1.52/\text{hour}$$

A regular rate of $1.52 per hour results in a minimum wage shortfall of $5.73 and an overtime shortfall of $12.21 per hour. Ms. Yin is therefore entitled under the FLSA to unpaid minimum wages of $5.73 per hour (that is, $7.25 minus $1.52) for each of the forty straight time hours per week, and $12.21 [($9.15 x 1.5) - $1.52)] for each of her 14.75 weekly overtime hours. The resulting calculations are as follows:

| A Work Period | B Total Hours Per Week | C Monthly Pay | D Weekly Pay | E Regular Rate | F Straight Time Shortfall Per Hr. ($7.25 – E) | G Overtime Shortfall Per Hr. (CT Min. wage x 1.5 – E) | H No. of Weeks in Period | I Total Wage Shortfall: ((F x 40) + (G x (B – 40)) x H |
|---|---|---|---|---|---|---|---|---|
| 7/27/2015 – 11/30/2015 | 54.75 | $360 | $83.08 | $1.52 | $5.73/hr. | $12.21/hr. | 18 | $7,368.60 |
| | | | | | | | Total: | $7,368.60 |

Calculating her part-time damages is simple. Ms. Yin says that while she worked part-time, she was paid $15 a day for an average of nineteen hours of work over two days. Assuming an average of 9.5 hours a day, this results in an hourly rate of $1.58:

$$\$15 / 9.5 = \$1.58$$

There will be no overtime shortfall, but that results in a minimum wage shortfall of $5.67/hr. Multiplying that by nineteen hours, she had a minimum wage shortfall of $107.75 per week. Finally, she worked part-time for 25.86 weeks, resulting in damages of $2,786.11 ($107.75 x 25.86). Thus, Ms. Yin is entitled to damages resulting from the time that she worked full-time in the amount of $7,368.60 and damages from her part-time work in the amount of $2,786.11. I

therefore recommend that the judgment that enters in Ms. Yin's favor include unpaid wages in the amount of **$10,154.71**.

### 4. *Liquidated damages*

Both the FLSA and the CMWA permit a plaintiff to recover liquidated damages in an amount equal to her unpaid wages. *See* 29 U.S.C. § 216(b); Conn. Gen. Stat. § 31-68(a); Conn. Gen. Stat. § 31-72; *see also Fuk Lin Pau*, 2015 WL 6386508, at *9. Specifically, the FLSA provides in Section 216(b) that "[a]ny employer who violates" the Act's overtime provisions "shall be liable to the employee . . . [for] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The CMWA likewise provides that "if any employee is paid by his or her employer less than the . . . overtime wage to which he or she is entitled," "such employee shall recover, in a civil action . . . twice the full amount of such . . . overtime wage less any amount actually paid to such employee by the employer." Conn. Gen. Stat. § 31-68(a)(2); *see also* Conn. Gen. Stat. § 31-72 ("When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee . . . shall recover, in a civil action . . . twice the full amount of such wages.").

Awards of liquidated or double damages are not mandatory under either statute. Under the FLSA, an employer may avoid such an award if he "shows to the satisfaction of the court that the act or omission giving rise to [the plaintiff's] action was in good faith and he had reasonable grounds for believing that his act or omission was not in violation of" the Act. 29 U.S.C. § 260; *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999). And the CMWA similarly provides that an employer can escape an award of double damages if "the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law." Conn. Gen. Stat. § 31-68(a)(2); *see also* Conn. Gen. Stat. § 31-72;

*Rodriguez v. Kaiaffa, LLC*, No. X03-HHD-CV-17-6088349-S, 2021 WL 4775624, at *9 (Conn. Super. Ct. Sept. 13, 2021).

If the employer seeks to avoid liquidated or double damages, however, it bears the burden to prove its good faith. Under the FLSA, "[t]he employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman*, 172 F.3d at 142; *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997). And under the CMWA, it is likewise the employer "who must prove good faith to avoid double damages." *Morales v. Gourmet Heaven, Inc.*, 2016 WL 6996976, at *12; *accord Rodriguez*, 2021 WL 4775624, at *9-10. As one court in this district explained, "[a]n amendment, effective October 1, 2015, to Connecticut General Statutes § 31-72, shifted the burden of proving the requisite good faith belief for the purpose of determining whether the employer can avoid otherwise mandatory double damages, from the plaintiff to the defendant." *Morrison v. Ocean State Jobbers, Inc.*, 180 F. Supp. 3d 190, 196 (D. Conn. 2016).

Because it is the employer's burden to prove good faith – not the employee's burden to prove bad faith – courts often award liquidated damages when the employer defaults. In *Tapia v. Mateo*, for example, the court awarded liquidated damages because the employer had not met its burden under 29 U.S.C. § 260 on account of its default. 96 F. Supp. 3d 1, 5 (D. Conn. 2015). And in *Pena v. Super Econ. One Way Supermarket Corp.*, the court observed that since the defaulting "Defendants did not respond to the [plaintiff's] motion, there is no showing of good faith and liquidated damages are appropriate." No. 1:20-cv-03060 (MKB) (PK), 2021 WL 4755603, at *11 (E.D.N.Y. Sept. 8, 2021); *see also Pavia v. Around the Clock Grocery, Inc.*, No. 03-cv-6465 (ERK), 2005 WL 4655383, at * (E.D.N.Y. Nov. 15, 2005) ("Here, the employers have defaulted

and thus have presented no evidence to rebut the presumption in favor of an award of double damages.").

This case provides no reason to depart from these principles. I therefore recommend that Ms. Zhu's judgment include liquidated damages under the FLSA of $15,470.70[8] and Ms. Yin's judgment include liquidated damages under the FLSA of $10,154.71.

### 5. *Pre-judgment interest*

Ms. Zhu also seeks an award of pre-judgment interest, but "[i]t is well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). This is because "[l]iquidated damages under the FLSA are not a penalty," but instead "a form of pre-judgment interest, and for that reason a plaintiff who prevails on his FLSA claim and receives liquidated damages may not also receive an award of interest." *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008); *see also Fitzgerald v. Bondfactor Co., LLC*, No. 15-cv-6796 (CM) (FM), 2016 WL 4939082, at * (S.D.N.Y. Aug. 31, 2016) ("To allow an employee to recover unpaid wages and liquidated damages, with interest, would have the effect of allowing interest on interest."). The CMWA has no such limitation, and indeed courts in this district have awarded prejudgment interest in addition to liquidated damages under that statute. *Strauch v. Computer Sciences Corp.*, No. 3:14-cv-956 (JBA), 2018 WL 5870337, at *5-7 (D. Conn. Nov. 9,

---

[8]     The Plaintiff briefly suggests in her Memorandum in Support of Default Judgment that an award of liquidated damages under *both* the FLSA and CMWA would be "reasonable in the context of a default judgment." (ECF No. 97, at 14-5.) But the cases she cites all pre-date the Second Circuit's decision in *Rana v. Islam*, 887 F.3d 118 (2d Cir. 2018). Moreover, she has not included double liquidated damages in her calculations (ECF No. 96-3, at 1), in the conclusion of the Memorandum in support (ECF No. 97, at 17), nor in the total request in her proposed judgment. (ECF No. 96-5.) I decline to recommend an award of double liquidated damages on such a thin and underdeveloped submission.

2018).   But because Ms. Zhu comes out better under the FLSA than under the CMWA, I recommend that the court award no prejudgment interest.

### 6.   *Attorneys' fees*

#### a.   **Governing legal principles**

Under both the FLSA and the CMWA, successful plaintiffs can recover "reasonable" attorneys' fees. 29 U.S.C. § 216(b); Conn. Gen. Stat. §§ 31-68, 31–72.  In the case of the FLSA, an award of reasonable attorneys' fees is mandatory.  29 U.S.C. § 216(b) ("The court . . . *shall* . . . allow a reasonable attorney's fee. . . .") (emphasis added); *Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 415 n.5 (1978); *Davis v. Ching Yi Cheng*, No. 16-cv-1354 (ADS) (SIL), 2017 WL 6622545, at *14 (E.D.N.Y. Dec. 28, 2017) ("Section 216(b) makes fees mandatory for prevailing plaintiffs.").   The CMWA provides that a successful plaintiff may recover "such reasonable attorneys' fees as may be allowed by the court."  Conn. Gen. Stat. § 31-68(a).

"As a general matter, the starting point in analyzing whether claimed attorneys' fees are appropriate is the lodestar[.]"  *Yuajian Lin v. La Vie en Schezuan Rest. Corp.*, No. 15-cv-09507 (DF), 2020 WL 1819941, at *2 (S.D.N.Y. Apr. 9, 2020) (citing *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)) (internal quotation marks omitted).  The "lodestar" is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea*, 658 F.3d at 166.  While the Second Circuit has suggested that the term is outdated, *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) ("The meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness."), it has also held that district courts must calculate the figure.  *Ortiz v. City of N.Y.*, 843 F. App'x 355, 358 (2d Cir. 2021) (summary order) ("We have explained that district courts evaluating a request for attorneys' fees must conduct a lodestar

analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate, which results in a presumptively reasonable fee.") (internal quotation marks omitted).

In assessing the first factor in the lodestar calculation – the reasonable hourly rate – the Second Circuit has directed district courts to "bear in mind *all* of the case-specific variables that [it] and other courts have identified as relevant to the reasonableness of an attorney's fees." *Arbor Hill*, 522 F.3d at 190 (emphasis in original). "The reasonable hourly rate is the rate a paying client would be willing to pay," and in determining that rate, district courts should consider (among other things) the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[9] *Id.* Courts should also "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* A reasonable, paying client also "presum[ably] . . . would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Id.* Accordingly, "[w]hen an attorney's requested hourly rate is higher than the rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate." *Yuajian Lin*, 2020 WL 1819941, at *2 (citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)).

In analyzing the second lodestar factor – the reasonable number of hours required by the case – courts consider, among other things, the quality of the representation and the complexity of

---

[9]     The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Lilly v. City of N.Y.*, 934 F.3d 222, 228 (2d Cir. 2019).

the work. "In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, and whether the work was complicated or straightforward." *Id.*; *see also Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13-cv-3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) ("In assessing whether the hours worked were reasonable, courts in this district often take into account the straightforward nature of the work performed and the relative simplicity of the issues involved.") (citation and brackets omitted). Courts are "not to compensate counsel for unnecessary hours . . . and in sizing the appropriate reduction, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 57 (S.D.N.Y. 2015) (citation and internal quotation marks omitted). In any event, the party seeking fees bears the burden of demonstrating that its request is reasonable, and it must provide the Court with enough information to assess its application. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

### b.    Application to this case – reasonable rates

In this case, the Plaintiffs have supported their fee application with two principal documents. The first is a twenty-seven-page declaration from their lead counsel, Attorney John Troy, describing (among other things) his and his colleagues' experience in wage and hour cases and his long history of representing low-income individuals in the Mandarin-speaking immigrant community. (ECF No. 96-1.) The second is a copy of the Troy Law firm's time records, which appear to have been maintained contemporaneously throughout the litigation, and which show the hours that Attorney Troy and his colleagues claim to have expended on the case. (ECF No. 96-4.)

The Plaintiffs seek an award of $550 per hour for Attorney Troy's services.  (ECF No. 96, ¶ 54.)  Attorney Troy has served as attorney of record in 380 wage and hour cases in district courts across the country, including ten in the District of Connecticut.  (*Id.* ¶¶ 22-25.)  He notes that he was twice awarded $550 per hour, but the next highest award cited in his declaration is $400 per hour.  (*Id.* ¶ 29.)  The Plaintiffs also seek $400 per hour for "managing associate" Aaron Schweitzer, $200 per hour for "associate" Tiffany Troy, and $200 per hour for "managing clerk" Preethi Kilaru.  (*Id.* ¶ 54.)

Courts in this circuit have ruled upon the reasonableness of the Troy Law firm's rates on several prior occasions.  As directed by *Arbor Hill* and *Johnson*, those courts have considered the firm's extensive experience and expertise in wage and hour cases.  *See, e.g., Wei*, 2022 WL 385226, at *16 (recognizing the firm's extensive experience in similar cases); *Yuajian Lin*, 2020 WL 1819941, at *3 (acknowledging that Attorney Troy "has specialized in wage and hour cases like this one," and noting the "hundreds of wage-and-hour cases in which he is currently counsel of record").  They have also considered whether "the subject matter and legal questions involved . . . were straightforward, non-complex issues one would anticipate in an [FLSA] litigation."  *Singh v. A & A Market Plaza, Inc.*, No. 15-cv-7396 (AKT), 2019 WL 4861882, at *9 (E.D.N.Y. Sept. 30, 2019); *accord Run Guo Zhang v. Lin Kumo Japanese Rest.*, No. 13-cv-6667 (PAE), 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015) (analyzing whether the firm's "work in this unexceptional case was within the mainstream of legal work in these cases").  In some cases, courts have commented upon the quality of the work in determining a reasonable rate.  *E.g., Ge Chun Wen*, 2021 WL 3375616, at *20-21 (reducing rates because "the Docket of this action reflects numerous filing deficiencies . . . careless assertions, inconsistencies, and obvious errors."); *Wei,* 2022 WL 385226, at *17 (recommending higher rate than in *Ge Chun Wen* because "this case was litigated

in workmanlike fashion").  Courts have also observed that the firm's senior attorneys sometimes "performed work that could readily have been performed by a more junior attorney or even a paralegal."  *Ge Chun Wen,* 2021 WL 3375616, at *21; *accord Wei*, 2022 WL 385226, at *17 (observing that Attorney Troy "did not always perform work commensurate with his level of experience") (citation and quotation marks omitted).  And, of course, courts have considered the hourly rates generally charged by other attorneys in the district in similar cases.  *E.g., Guo v. Tommy's Sushi*, No. 14-cv-3964 (PAE), 2016 WL 452319, at *5 (S.D.N.Y. Feb. 5, 2019) (comparing Troy Law's requested rates against "prevailing rates . . . in employment law cases in this District").

Applying these factors, district courts have generally declined to accept Troy Law's requested rates.  In *Wei*, for example, I observed that courts in the District of Connecticut generally approved hourly rates of between $300 and $400 for experienced partner-level attorneys like Attorney Troy.  2022 WL 385226, at *17.  And I declined to place him at the top of that range, in part because his bill reflected too much "work that could have been done by a junior associate or paralegal."  *Id.*  The *Yuajian Lin* court conducted a similar analysis, first observing that "a reasonable rate for senior attorneys handling wage-and-hour cases, in [the Southern District of New York], typically ranges from $300 to $400 per hour."  2020 WL 1819941, at *3.  It then considered "where, within that general range, Troy's rate, in particular, should fall."  *Id.*  Noting that "the pretrial management of [the] case by Troy Law was uneven at best," it awarded Attorneys Troy and Schweitzer hourly rates of $325 and $125, respectively.  *Id.* at *5.  The same judge reached the same conclusion in *Ge Chun Wen.*  "In light of the poor quality of work that was reflected in many of Troy Law's filings, combined with the fact that Troy did not consistently perform work commensurate with his level of experience," she recommended to the District Judge

"that Troy be awarded the reduced rate of $325 per hour" and "that the rate of $125 per hour would be reasonable to compensate Plaintiff for Schweitzer's work." 2021 WL 3375615, at *20-22.[10]

In this case, I recommend that Attorney Troy's hourly rate be reduced from $550 to $350, for several reasons. To begin with, hourly rates above $400 are higher than the rates found to be reasonable in the district for cases of this type. *Wei,* 2022 WL 385226, at *17 (citing cases for the proposition that reasonable rates for partner-level attorneys in employment cases in the District of Connecticut range from $350 to $400). Moreover, the firm's invoice confirms that Attorney Troy continues to perform work that could have been done by an associate or paralegal, as he did in *Wei;* for example, the invoice shows him spending half an hour filing a simple consent form on the docket; 1.8 hours preparing retainer agreements; 2.2 hours drafting proposed notices to the FLSA collective; five hours drafting interrogatories and requests for production; and 0.75 hours drafting a deposition notice. (ECF No. 96-4.) Additionally, his work contained the sorts of errors that caused the *Yuajian Lin* and *Ge Chun Wen* courts to reduce his hourly rate even lower than $350. Just to cite a few examples, his Rule 26(f) report omitted basic, required information and was rejected by the Court (ECF Nos. 15, 16); his damages calculation contained errors that, had the Court not caught them, would have shortchanged his client, Ms. Yin (*see* discussion, Section II.B *supra*); he peddled a tip retention claim that is manifestly unsupported by the law and by the evidence that he submitted (*see* discussion, Section III.B.3.a *supra*); and he pitched for double

---

[10]    In his declaration, Attorney Troy states that he was awarded a rate of $550 per hour in *Hu v. 226 Wild Ginger, Inc.*, No. 1:17-cv-10161 (S.D.N.Y.) and *Zhang v. Chongqing Liuyishou Gourmet NH Inc.*, No. 2:18-cv-10359 (D.N.J.) (ECF No. 27, ¶ 29.) Like the courts in *Ge Chun Wen* and *Yuajian Lin*, I do not find these citations persuasive. The *Hu* and *Zhang* courts "did not cite to any other cases in which Troy had been awarded that rate," and in *Zhang* "the attorneys in the cases cited by the court were awarded significantly less than $550 per hour." *Yuajian Lin*, 2020 WL 1819941, at *3. Moreover, even if Attorney Troy had been awarded this rate in another district, "[c]ourts should rely on the prevailing rates *within their district* when determining a reasonable hourly rate." *Gao*, 2021 WL 1949275, at *17 (emphasis added).

liquidated damages with stock paragraphs that he apparently has not updated in more than five years.  (ECF No. 97, at 14-15) (citing authorities that pre-date *Rana*, 887 F.3d 118).[11]

    I further recommend that Attorney Schweitzer be awarded $175 per hour, as I did in *Wei.* While the Connecticut cases provide fewer data points on associate rates than on partner rates, the available authorities suggest that $175 per hour is a reasonable rate for an employment law associate with Attorney Schweitzer's experience.  In *Strauch*, an FLSA/CMWA case, the plaintiffs' local counsel firm charged rates "rang[ing] from $125 to $180" for work done by its associates. *Strauch v. Computer Scis. Corp.*, No. 3:14-cv-956 (JBA), 2020 WL 4289955, at *5 (D. Conn. July 27, 2020).  And in *Beacon Insurance and Investment Group, LLC v. Panzo*, a dispute over non-competition agreements, the court approved associate rates of "$225 and $175 . . . considering the experience, education, number of years in practice and skill as associates."  No. NNH-CV-14-6044992-S, 2016 WL 4507389, at *16 (Conn. Super. Ct. July 25, 2016).  Moreover, like Attorney Troy, Attorney Schweitzer performed a considerable amount of work that could have been done by a paralegal.  His time entries include 0.75 hours for "research[ing]" the Defendants' website; .5 hours for researching a business entity database; and a full hour to "Email Local Counsel to send the Courtesy copy to the Judge" and "Review the Judges [sic] Individual Rules."  (ECF No. 96-4) (capitalization as in original).

    I recommend that Tiffany Troy be awarded $140 per hour.  While John Troy's affidavit presents her as an associate attorney (ECF No. 96, ¶ 40), she was admitted to the bar of this Court

---

[11]    Indeed, I find the citation to pre-*Rana* New York cases quite disconcerting.  It is one thing to say that *Rana* does not control the question of double liquidated damages in Connecticut; others have made that argument in good faith.  *See, e.g., Ojeda Hernandez v. Little K's Landscaping, LLC*, No. 3:23-cv-460 (SVN), Memo. in Supp. of Pls.' Mot. for Def. J., ECF No. 18-1, at 15-16 & n.6 (D. Conn. June 30, 2023).  But it is another thing entirely to cite pre-2018 cases under the New York Labor Law.  The Second Circuit has foreclosed the claim that double liquidated damages may be recovered under that statute.  *Rana*, 887 F.3d at 119.

only in 2022, and she functioned as a paralegal for most of the life of this case.  Of the 9.07 hours

that she claims, only 2.3 post-dated her admission.  (ECF No. 96-4, at 5-6.)  I likewise recommend

an hourly rate of $140 for "managing clerk" Preethi Kilaru, because her time entries disclose that

her work was essentially paralegal in nature.  (*Id.* at 1-6.)  $140 is "an appropriate hourly rate for

paralegal work in this district."  *Wei*, 2022 WL 385226, at *18 (citing cases).

### c.    Application to this case – reasonable hours

Attorney Troy says that his firm spent 133.42 hours on this case.  (ECF No. 96, ¶ 54.)  He

says that he expended 89.62 – or 67% – of these hours himself.  (*Id.*)  Attorney Schweitzer worked

on the case for 30.28 hours, and paralegal-turned-attorney Tiffany Troy put in 9.07 hours.  (*Id.*)

Managing clerk Kilaru worked 4.45 hours.  (*Id.*)

Having carefully reviewed the billing records, I conclude that the Plaintiffs have not met

their burden to demonstrate the reasonableness of these figures.  The Troy Law firm's bill contains

several facially unreasonable entries, including 1.8 hours to prepare and sign retainer agreements;

3.0 hours to "research" the Defendants' websites; 2.0 hours to draft and send a co-counsel

agreement with its local counsel; .5 hours to "draft" a certificate of good standing for *pro hac vice*

admission, when in fact the certificate was drafted by the Clerk of the Appellate Division of the

New York Supreme Court (ECF No. 14); 3.5 hours to prepare Ms. Zhu's and Ms. Yin's default

judgment affidavits, when those affidavits were largely taken verbatim from their earlier affidavits

in support of class certification (*compare* ECF Nos. 96-1, 96-2 *with* ECF Nos. 40-4, 40-5); and so

on.  Other courts have regarded similar billing entries from the same firm as unreasonable.  *E.g.,*

*Singh v. Meadow Hill Mobile Inc.*, No. 20-cv-3853 (CS) (AEK), 2021 WL 3862665, at *17

(S.D.N.Y. Aug. 29, 2021); *Lu Wan v. YWL USA Inc.*, No. 18-cv-10334 (CS), 2021 WL 1905036,

at *7 (S.D.N.Y. May 12, 2021) (noting "[e]xamples of grossly excessive billing – to the point

where fabrication cannot be ruled out"); *Jin v. Shanghai Original, Inc.*, No. 16-cv-5633 (ARR) (JO), 2020 WL 4783399, at *8 (E.D.N.Y. Aug. 18, 2020) (adopting magistrate judge's recommendation of an "across-the-board reduction of 40%" of billable hours because "plaintiff's attorneys' billing records frequently are vague and redundant and reflect overstaffing and poor billing judgment").

I also conclude that the Plaintiffs have not met their burden to demonstrate the reasonableness of the distribution of the work between partners, associates, and paralegals.  Here as in *Singh*, "[a]s the most experienced attorney with the highest billable rate, John Troy should not have been the one to perform the majority of the work in this matter."  *Singh*, 2021 WL 3862665, at *17.   The firm's billing records in this case reflect Attorney Troy personally performing – that is, not delegating to associates or paralegals – such tasks as preparing retainer agreements (1.8 total hours); drafting interrogatories, requests for production, and deposition notices (6.25 total hours); reconfiguring Ms. Zhu's and Ms. Yin's class certification affidavits for submission in connection with the default judgment motion (3.5 total hours); and filing the default judgment package through the CM/ECF system (0.5 hours).  In a "relatively straightforward [wage and hour] case, staffing the case in such a matter warrants an across-the-board adjustment in the number of hours billed."  *Singh,* 20201 WL 3862665, at *17 (quoting *Agudelo v. E & D LLC*, No. 12-cv-960 (HB), 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013)).

Courts "have applied reductions, often between 15 to 30 percent, to account for issues like vagueness in counsel's time records, and the resulting inability of the Court to assess the reasonableness of counsel's hours."  *Ge Chun Wen*, 2021 WL 3375616, at *24 (citing cases applying reductions of up to thirty percent).  "Percentage reductions may also be appropriate where it appears, for other reasons, that the time expended by counsel was excessive."  *Id.* (citing *Carey*,

711 F.2d at 1142, 1146, for the proposition that "a percentage reduction may be applied as a 'practical means of trimming fat' from a fee application"). Applying these principles, courts have made across-the-board reductions of as much as forty percent to Troy Law's bills. *See, e.g., Lu Wan*, 2021 WL 1905036, at *7; *Jin*, 2020 WL 4783399, at *8.

In *Wei*, I recommended reductions ranging from zero to fifteen percent, depending on the timekeeper. For Attorney John Troy, then-paralegal Tiffany Troy, and Ms. Kilaru, I recommended a reduction of only fifteen percent because "[s]ome of the most striking examples of facially unreasonable billing entries present in cases" like *Lu Wan* were not present there. 2022 WL 385226, at *20. And I recommended a zero percent reduction for Attorney Schweitzer, because he had only three time entries in the case, and none of them appeared unreasonable. *Id.* at *20 n.9. In this case, a higher percentage of time entries appear unreasonable, and they affect all timekeepers including Attorney Schweitzer. I therefore recommend that each timekeeper's hours be reduced by twenty-five percent.

### d. Summary of recommendation on attorneys' fees

Multiplying the reasonable rates and reasonable hours derived above, I recommend that the Plaintiffs be awarded attorneys' fees in the amount of **$28,906.50**, broken down as follows:

| Timekeeper | Reasonable Rate | Claimed Hours | Percentage Reduction | Reasonable Hours | Reasonable Fee |
|---|---|---|---|---|---|
| John Troy | $350/hour | 89.62 | 25% | 67.2 | $23,520.00 |
| Aaron Schweitzer | $175/hour | 30.28 | 25% | 22.7 | $3,972.50 |
| Tiffany Troy | $140/hour | 9.07 | 25% | 6.8 | $952.00 |
| Preethi Kilaru | $140/hour | 4.45 | 25% | 3.3 | $462.00 |
| | | | | **Total:** | **$28,906.50** |

Of course, the product of a reasonable hourly rate and a reasonable number of hours establishes only a "presumptively reasonable" fee. "[I]t is still within the court's discretion to adjust the amount upward or downward based on [] case-specific factors." *Tyco Healthcare Grp.*

*LP v. Ethicon Endo-Surgery, Inc.*, No. 3:10-cv-60 (JBA), 2012 WL 4092515, at \*1 (D. Conn. Sept. 17, 2012) (citation and internal quotation marks omitted). "Hence, the process is really a four-step one, as the court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." *Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010). Here, however, I see no reason to adjust the amount upward or downward.

Finally, in some of their papers (but not others) the Plaintiffs requested an award of $842.78 in legal fees for their local counsel, Mitchell & Sheehan. (ECF No. 96-5, at 2.) They have submitted no time records for that firm, however, and it is well established that "[a]ll applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1154. This is "a strict rule from which attorneys may deviate only in the rarest of cases," *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010), and the Plaintiffs have provided no reason to do so here. For all the foregoing reasons, I recommend that the judgment that enters in favor of Ms. Zhu and Ms. Yin include an award of attorneys' fees in the amount of **$28,906.05**.

### 7.    *Costs*

The Plaintiffs also seek awards of costs incurred by Troy Law. (*See* ECF 96, at 26; ECF No. 96-4, at 6.) In addition to the lodestar amount, an award of attorneys' fees may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). "These expenses, or 'costs,' may include photocopying, travel, telephone costs, and postage, as well as filing fees and reasonable

process-server fees." *Yuajian Lin*, 2020 WL 1819941, at *2 (citing *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987)).  Here, the Plaintiffs seek to recover $1,379.03 in costs incurred by the Troy firm, composed of a $400 filing fee, a $75 *pro hac vice* fee, and the remainder in service of process costs and postage.  (ECF No. 96-4, at 6.)  I conclude that all these sums are reasonable, with the exception of the $75 *pro hac vice* fee.  I agree with those courts that have held that "costs associated with the filing of pro hac vice applications are generally not reimbursable," *e.g., Div. 1181 Amalgamated Transit Union v. D & A Bus Co.*, 270 F. Supp. 3d 593, 629 (E.D.N.Y. 2017), at least in cases like this one that implicate no unusual issues requiring out-of-district expertise.  *See also Doe by & through Doe v. E. Lyme Bd. of Educ.*, No. 3:11-cv-291 (JBA), 2019 WL 1397455, at *11 (D. Conn. Mar. 27, 2019) (declining to award attorney's fees for time spent on *pro hac vice* motion where plaintiff made no showing of efforts to obtain in-state counsel).  I therefore recommend that the Plaintiffs' claim for costs be allowed in the amount of $1,304.03.

### 8.    *The Defendants against whom judgment should enter*

Having recommended that judgment enter in favor of each of the two Plaintiffs, I will now consider whether those judgments should enter against all or fewer than all the Defendants.  For the following reasons, I recommend that the judgments enter against Mr. Cheng and Mr. Cao as well as the entity Defendants.

"To be held liable under the FLSA, a person must be an 'employer,' defined broadly as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Sikiotis v. Vitesse Worldwide Chauffeured Servs., Inc.*, 145 F. Supp. 3d 39, 45 (D. Conn. 2015) (quoting 29 U.S.C. § 203(d)).  "When determining whether an individual or an entity is an 'employer' under the FLSA, courts evaluate the 'economic reality' of the relationship by focusing on 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised

and controlled employee work scheduled or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 45-46 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  "No one of the four factors standing alone is dispositive," because "the 'economic reality test encompasses the totality of the circumstances." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  Relatedly, "[t]he lack of one *Carter* factors is not fatal" to a Plaintiff's claim against an individual defendant.  *Fermin*, 93 F. Supp. 3d at 36.  In particular, a defendant may not seek to avoid liability on the ground that he did not "maintain[] employment records" when such records were not kept at all.  *Id.*

In this case, the Plaintiffs' complaint allegations and declarations support regarding Mr. Cheng and Mr. Cao as "employers."  The Plaintiffs allege that Mr. Cheng and Mr. Cao "had the power to hire and fire employees," "supervised and controlled employee work schedules or conditions of employment," "determined the rate and method of payment," and "maintained employee records" (Am. Compl., ECF No. 82, ¶¶ 19, 22), allegations that are deemed admitted by the Defendants' default.  *Greyhound Exhibitgroup,* 973 F.2d at 158; *see also Torres v. Jin Xiang Trading Inc.*, No. 17-cv-2866 (RJD) (PK), 2020 WL 981408, at *6 (E.D.N.Y. Mar. 12, 2020) ("Plaintiffs' well-pleaded allegations" that individual defendants "controlled the terms and conditions of their employment, and determined the rate and method of their payment . . . support the conclusion that Defendants were Plaintiffs' employers[.]")  Further, both Plaintiffs say in their declarations that they considered both Mr. Cheng and Mr. Cao to be their bosses and that Mr. Cheng and Mr. decided what days they would work, the hours they worked, and the compensation they would receive.  (ECF No.  96-1, ¶¶ 5-8 (Zhu); ECF No. 96-2, ¶¶ 5-8 (Yin).)  Ms. Zhu says that she was hired by Mr. Cheng and Mr. Cao and that she was paid by Mr. Cao (ECF No. 96-1, ¶¶ 7-8), whereas Ms. Yin says that she was hired by Mr. Caro and was paid by Mr. Cheng.  (ECF

No. 96-2, ¶¶ 7-8.)   The record thus supports regarding both Mr. Cheng and Mr. Cao as "employers."   I therefore recommend that judgment enter against them as well as the entity Defendants, Matsu Corp. and Matsu Grill Co. LLC.

## IV. CONCLUSION

For the foregoing reasons, I recommend that:

A.  Judgment enter in favor of the Plaintiff Gui Zhen Zhu in the amount of $30,941.40;

B.  Judgment enter in favor of the Plaintiff Rong Jiao Yin in the amount of $20,309.42;

C.  Each of the aforementioned judgments enter jointly and severally against each of the four Defendants;

D.  The Plaintiffs be awarded attorneys' fees in the amount of $28,906.50; and

E.  The Plaintiffs be awarded costs in the amount of $1,304.03.

This is a recommended ruling by a magistrate judge.  Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).  If any party wishes to object to this recommendation, it must file that objection with the Clerk of the Court within fourteen days.  Fed. R. Civ. P. 72(b)(2); D. Conn. L. Civ. R. 72.2(a).  If a party does not object within that time, it may not thereafter assign as error any claimed defect in this recommended ruling.  *Id.*  Failure to file a timely objection will also preclude appellate review.  *See* 28 U.S.C. § 636(b)(1); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *accord Impala v. U.S. Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge